**Opinion issued December 30, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00454-CV
_____

**VELOCITY DATABANK, INC. AND TOM PELATARI D/B/A VELOCITY DATABANK, INC., Appellants**

**V.**

**SHELL OFFSHORE, INC., SHELL OIL COMPANY, SHELL EXPLORATION & PRODUCTION COMPANY, AND FAYE SCHUBERT, Appellees**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-68029**

---

## O P I N I O N

This is an appeal from the trial court's order granting summary judgment in

favor of Shell Offshore, Inc., Shell Oil Company, Shell Exploration & Production

Company, and Faye Schubert (collectively, "Shell") on Velocity Databank, Inc. and Tom Pelatari *d/b/a* Velocity Databank, Inc.'s (collectively, "Velocity Databank") claims for defamation and libel. In one issue, Velocity Databank contends that the trial court erred in granting Shell's motion for summary judgment because (1) there is no "public record" exception to the application of the discovery rule in defamation cases; (2) the "public knowledge" exception to the application of the discovery rule in defamation suits is inapplicable in this case; and (3) fact issues exist regarding when Velocity Databank knew or, by the exercise of reasonable diligence, should have known of the alleged defamation.

We affirm.

**Background**

Shell operates oil and gas wells on offshore blocks in the Gulf of Mexico under lease from the federal government. Velocity Databank sells geophysical data to companies in the oil and gas industry. In 1988, Shell and Velocity Databank entered into a license agreement under which Velocity Databank allowed Shell access to its Gulf of Mexico geophysical data, including velocity surveys.

In December 1998, the United States Minerals Management Service ("MMS")[1] began the Historical Well Data Cleanup Project, a project whose purpose was to correct, complete, and update the agency's historical data on all

---

[1] At that time, the MMS was the federal agency tasked with managing the mineral resources beneath the outer continental shelf of the Gulf of Mexico.

wells drilled on offshore blocks in the Gulf of Mexico region. To that end, MMS required operators and leaseholders in the Gulf of Mexico, including Shell, to identify a contact person within their organization to facilitate the identification and transfer of requested data regarding wells in the region to MMS. MMS then loaded the data onto its web-based, publicly accessible geophysical database known as the Technical Information Management System, or "TIMS." TIMS is hosted on, and accessible to the public through, the MMS website.

In October 2000, MMS analyst Scott Cranswick contacted Faye Schubert, a Shell employee and one of its contacts on the project, to request velocity surveys for two offshore Gulf of Mexico wells. On October 19, 2000, Schubert responded to Cranswick via email as follows:

> Scott,
>
> We have checked our file room for hard copies of the two surveys you are looking for.
> We have one in the corporate database but this is from velocity databank, which you might already have. These velocity DB surveys are sometimes not very good as they tend to make up time-depth pairs from the horizontal profile instead of the vertical profile.
> . . . .
> The bottom line is that we only have the one digital survey and it is questionable.

On or about October 19, 2000, MMS posted the velocity survey provided by Schubert on TIMS, along with the following notations interspersed among lines of data:

3

[S]urvey data is bogus. 10/19/2000 Faye Schubert said this velocity survey is from Velocity Databank, Inc. which has dubious value because the time/depth pairs were generated by this company using a velocity model and likely are not actual check shot. . . . This survey was acquired from Velocity Databank, Inc., which means it might be a fictitious survey generated from a regional grid of velocity functions that were mapped by Velocity Databank who would provide fictitious velocity surveys from their com.

On November 10, 2010, in the process of preparing a document for a sales pitch, William Gray, a Velocity Databank consultant, reviewed and downloaded a file from TIMS called "velocity function." While scanning the data, Gray discovered the MMS statements regarding Velocity Databank. On November 11, 2010, Gray sent a letter to Shell seeking an explanation for the "derogatory and defamatory public comments about the quality and source of this data and the products provided to the oil industry—and to Shell Oil—by Velocity Databank, Inc."

On January 10, 2011, Steve Heying, a Shell staff geoscience specialist, sent an email to Pelatari apologizing for releasing the survey without Velocity Databank's consent. Heying, however, concluded:

[I]n regards to Faye defaming Velocity Databank, you can see that her actual comments, that accompanied the data, in no way resemble the comment published by the MMS. Apparently, someone at the MMS chose to editorialize the comments prior to publishing on their website. The MMS has since removed both surveys from their website.

4

Heying's email included a zip file attachment of Schubert's October 19, 2000 email to Cranswick. After inspecting the attachment, Velocity Databank determined that the well survey in question had not originated from Velocity Databank.

On November 9, 2011—more than ten years after MMS published the statements in question—Velocity Databank sued Shell for defamation and libel and pleaded the discovery rule. Shell generally denied the allegations and also pleaded several affirmative defenses, including statute of limitations. Shell subsequently moved for summary judgment on limitations grounds. On March 1, 2013, the trial court granted Shell's motion. Velocity Databank moved for a new trial; the trial court denied its motion on March 24, 2013. Velocity Databank timely filed this appeal.

## Discussion

### A. Standard of Review

We review a trial court's decision to grant a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Under the traditional summary judgment standard, the movant has the burden to show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop.*

*Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In determining whether there are disputed issues of material fact, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Nixon*, 690 S.W.2d at 548–49.

A defendant is entitled to summary judgment on an affirmative defense if it conclusively proves all the elements of the affirmative defense. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Where a defendant seeks summary judgment on the basis of limitations, it must (1) conclusively prove when the cause of action accrued and, (2) if the plaintiff has pleaded the discovery rule, conclusively negate it. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). If, as here, the summary judgment does not specify the grounds on which it was granted, the appealing party must demonstrate on appeal that none of the proposed grounds are sufficient to support the judgment. *Rogers v. Ricane Enter.*, 772 S.W.2d 76, 79 (Tex. 1989). Because the trial court in this case did not specify the ground on which it relied for its ruling, we will affirm if any theory advanced by Shell in its summary judgment motion is meritorious. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

## B. Limitations

In its petition, Velocity Databank alleged defamation, libel per se, and defamation per se against Shell. Under Texas law, all of these causes of action are subject to a one-year limitations period. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.002(a) (Vernon 2002). When the statute of limitations expired depends on when Velocity Databank's cause of action accrued. Generally, a defamation claim accrues when the matter is published or circulated. *See Newsom v. Brod*, 89 S.W.3d 732, 736 (Tex. App.—Houston [1st Dist.] 2002, no pet.). However, the discovery rule applies to an action for defamation when a defamatory statement is inherently undiscoverable or not a matter of public knowledge. *Id.*; *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 636 (Tex. App.—Houston [1st Dist.] 2002, no pet.). To be "inherently undiscoverable," an injury need not be impossible to discover, but it must be, by nature, unlikely to be discovered within the prescribed limitations period despite due diligence. *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996). In such cases, the limitations period begins to run when the plaintiff learns, or should have learned, of the existence of the defamatory statement. *Childs v. Haussecker*, 974 S.W.2d 31, 37 (Tex. 1998); *Wheeler,* 95 S.W.3d at 636–37.

The statute of limitations is applied strictly and the discovery rule is a very limited exception. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 457 (Tex. 1996). Whether the discovery rule applies is a question of law.

7

*Credit Union v. O'Connor*, 115 S.W.3d 82, 96 (Tex. App.—San Antonio 2003, pet. denied); *Steel v. Rhone Poulenc, Inc.*, 962 S.W.2d 613, 618 (Tex. App.—Houston [1st Dist.] 1998), *aff'd*, 997 S.W.2d 217 (Tex. 1999).

## Analysis

As the movant seeking summary judgment on limitations grounds, Shell bore the burden to prove conclusively the date on which Velocity Databank's cause of action accrued and, because Velocity Databank pleaded the discovery rule, to conclusively negate the rule. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam). The record reflects—and the parties do not dispute—that MMS first published the offending statements on TIMS on or about October 19, 2000. Velocity Databank filed its original petition more than ten years later, on November 9, 2011. Thus, barring application of the discovery rule, the petition was untimely filed and Shell was entitled to summary judgment.

In its summary judgment motion, Shell argued that Velocity Databank's "invocation of the discovery rule is unavailing for at least three reasons." First, Shell argued that information contained in public records is not "inherently undiscoverable." Second, it contended that the discovery rule does not apply to defamation claims based on statements involving "public knowledge," particularly those disseminated by mass media, including the Internet. Third, Shell asserted

8

that even if the discovery rule did apply to MMS's statements, Velocity Databank failed to exercise reasonable care and diligence in discovering them.

### *"Public Knowledge" Exception*

On appeal, Velocity Databank contends that the "public knowledge" exception to application of the discovery rule to defamation claims does not apply to this case. Shell argues, however, as it did in the trial court below, that the MMS statements—maintained on a public database of a federal government agency and accessible without charge or subscription by visitors to the agency's public website—are a matter of public knowledge, thus barring application of the discovery rule.

In support of their arguments, both parties rely on the Texas Supreme Court's decision in *Kelley v. Rinkle*, 532 S.W.2d 947 (Tex. 1976). In *Kelley*, the plaintiff sued the defendant for damages caused by the defendant's filing of a report with a credit agency stating that the plaintiff owed the defendant money on a past due account. *See id.* at 947. The trial court granted the defendant's motion for summary judgment on the ground that the plaintiff's suit was filed more than one year after his cause of action accrued and was therefore barred by the statute of limitations, and the court of appeals affirmed. *See id.* Concluding that the discovery rule should apply, the supreme court reversed and held that "the period of limitations for causes of action for libel of one's credit reputation by publication

9

of a defamatory report to a credit agency begins to run when the person defamed learns of, or should by reasonable diligence have learned of, the existence of the credit report." *Id.* at 949. The court then stated, "[w]e would not apply the discovery rule where the defamation is made a matter of public knowledge through such agencies as newspapers or television broadcasts." *Id.*

Velocity Databank contends that Shell's reliance on the foregoing dicta in *Kelley* to support its argument that the MMS statements published on TIMS are a matter of public knowledge is misplaced. Without citing any authority, it argues that while newspapers and television broadcasts are "intended to supply the news of the day" and are read or listened to by members of the public, "[i]t is extremely unlikely that a member of the public would simply sit down and read this material." Thus, Velocity Databank concludes, TIMS is not the equivalent of "mass media" and its material cannot be considered "public knowledge." We disagree.

As Velocity Databank acknowledges in its brief, the *Kelley* court's statement that newspapers and television are the types of mediums through which a defamatory statement could become public knowledge was merely suggestive.[2] *See id.* ("We would not apply the discovery rule where the defamation is made a matter of public knowledge through *such* agencies as newspapers or television

---

[2] We also note that *Kelley*, decided in 1976, predates the advent of the Internet.

10

broadcasts.") (emphasis added). Indeed, several courts since *Kelley* have recognized that information may become public knowledge through a variety of other media. *See, e.g.*, *Rhine v. Deaton*, 459 F. App'x 421, 422 (5th Cir. 2012) (on-line newspaper article); *Sorcic v. Int'l Ass'n for Fin. Planning*, 814 F. Supp. 27, 28 (S.D. Tex. 1992) (subscription-only industry newsletter); *Holloway v. Butler*, 662 S.W.2d 688, 693 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (monthly magazine) ("We will follow the suggestion our supreme court made in *Kelley* . . . and refuse to apply the discovery rule where an allegedly defamatory statement is disseminated via the mass media); *see also Smith v. Texas*, No. 2:10-CV-218-J, 2011 WL 2883402, at *7 (N.D. Tex. July 15, 2011) (Texas Department of Family and Protective Services on-line database). These cases belie Velocity Databank's assertion that information can only become "public knowledge" through media that disseminates "news of the day" to the general public. Further, a number of courts have expressly recognized the Internet as a mass medium. *See, e.g.*, *Hamad v. Ctr. for Jewish Cmty. Studies*, 265 F. App'x 414, 416–17 (5th Cir. 2008) (concluding that Internet is "mass medium" under Texas law for purposes of single-publication rule); *Serv. Emps. Int'l Union Local 5 v. Prof'l Janitorial Serv. of Houston, Inc.*, 415 S.W.3d 387, 394 (Tex. App.—Houston [1st Dist.] 2013, pet. filed) ("That Internet websites fall within the

11

broadest of these definitions as an electronic 'means of mass communication' is clear.").[3]

It is also worth noting that Velocity Databank regarded the publication of the statements to the MMS website as a public matter before it filed suit. In his November 11, 2010 letter to Pelatari, Gray stated that the MMS file to which the data and Schubert's allegedly defamatory statements were posted is "widely used in the industry"; he considered Schubert's quote as "a public slur of [Velocity Databank]"; Velocity Databank was "extremely disturbed and angered by the comment attached to this data and released to the public in the MMS file"; and he awaited Shell's response "to this employee's derogatory and defamatory public comments." As Velocity Databank considered the statements to be defamatory public comments about the quality of the data it provides to the oil industry before it filed suit, it can hardly argue now on appeal that the statements are not public knowledge.

Velocity Databank also argues that the defamatory statements are not "public knowledge" because the data found on TIMS is meaningless to those outside of the industry and is not intended to be read by members of the general

---

[3]     In its brief, Velocity Databank also asserts that "[t]he summary judgment evidence in the present case failed to identify a single member of the public who had knowledge of this defamation." We are not aware of any authority—nor does Velocity Databank direct us to any—requiring such a showing in order to demonstrate that a defamatory statement is "public knowledge."

public. We find this argument unavailing. Under Texas law, a matter may become public knowledge irrespective of whether it is disseminated to a broad or narrow audience. In *Shell Oil Co. v. Ross*, 356 S.W.3d 924 (Tex. 2011), the Texas Supreme Court characterized the prices published in the El Paso Permian Basin Index as "[r]eadily accessible and publicly available information." *Id*. at 929. As Shell notes, a member of the public is no more likely to read the El Paso Permian Basin Index than the information on the MMS website, but according to the court in *Ross*, such information is not "inherently undiscoverable" and will not support application of the discovery rule. *See also Sorcic*, 814 F. Supp. at 28 (concluding "alleged defamatory material [in subscription-only industry newsletter] was not a secret report hidden from view. It was readily available to the public and was therefore discoverable.") (citing *Holloway*, 662 S.W.2d at 693).

In sum, we conclude that the statements here, published on a website owned and maintained by a federal government agency and accessible to the public without charge or subscription, are "public knowledge" and are not inherently undiscoverable. As such, the discovery rule did not apply to Velocity Databank's defamation claims, and the trial court properly granted Shell's motion for summary judgment on limitations grounds.

We overrule Velocity Databank's sole issue.[4]

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Justice Sharp, dissenting from the judgment.

---

[4] Velocity Databank also argues that the trial court erred in granting Shell's summary judgment motion because (1) there is no "public record" exception to application of the discovery rule in defamation cases, and (2) fact issues exist regarding when Velocity Databank knew or, by the exercise of reasonable diligence, should have known of the defamation. Because we have determined that summary judgment was proper because the defamatory statements are public knowledge and, thus, the discovery rule is inapplicable, we need not reach Velocity Databank's two remaining arguments. *See* TEX. R. APP. P. 47.1.