**Motion for Rehearing Denied; Opinion of November 3, 2015 Withdrawn; Reversed and Remanded and Substitute Opinion filed December 3, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00683-CV

---

### FREDERIC SCOTT DEAVER, Appellant

### V.

### RIDDHI DESAI AND SHILPI PANKAJ DESAI, Appellees

---

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2014-18950**

---

### SUBSTITUTE OPINION

We deny the motion for rehearing, withdraw our opinion from November 3, 2015, and issue this substitute opinion in its place.

This is an interlocutory appeal from an order denying a motion to dismiss under the Texas Anti-SLAPP statute. We conclude that the movant below established his burden of showing that two of the claims against him were filed in response to his exercise of the right of free speech. We further conclude that even

if the nonmovants established by clear and specific evidence a prima facie case as to each essential element of the two claims, they still produced no evidence that would overcome a valid statute of limitations defense. Because the movant is entitled to a dismissal of the two claims, we reverse the trial court's order and remand for additional proceedings consistent with this opinion.

## BACKGROUND

In 2006, Frederic "Scott" Deaver was involved in a contentious divorce and child custody proceeding. After the divorce was finalized, Scott created a website where he could air his grievances against Riddhi Desai, the attorney who represented his former wife. The stated objective of the website was to seek Riddhi's disbarment because of her alleged "racial and gender hatred." Over the course of several years, Scott expanded the website in hopes of achieving an additional objective: the criminal prosecution of Riddhi's adult daughter, Shilpi, whom Scott believed had stolen his personal identity.

The website documented Scott's investigative work into the Desais. Scott mentioned on his website that he hired a private detective, who allegedly uncovered evidence that Shilpi was using six different social security numbers. Scott also mentioned that he had personal discussions with the police about this alleged crime. He even boasted that he was acting in the spirit of a glorified "Neighborhood Watch."

The entries on the website were long, written in blog or journal format, and occasionally digressed from the main narrative. In one of the digressions, Scott made sweeping generalizations about East Indian nationals, their cultural prejudices, and their alleged penchant for corruption. Scott also criticized the elected judiciary in this country, and he went so far as to likening the Texas Bar Association to a "cross between the Ku Klux Klan and a carnival barker." Scott

then tried to connect these various topics by suggesting that Riddhi—as a lawyer and a person of Indian heritage—will lie, cheat, or resort to trickery to win over a Texas judge.

Most of the criticism on the website was directed towards Riddhi alone, and the rhetoric was often coarse. Scott described Riddhi as "mercenary, manipulative, and man-hating." He claimed that she was a "cold-hearted professional liar," who hid "exculpatory evidence" that would have helped him during his divorce case. He also generally accused Riddhi of being an incompetent lawyer and having "no class whatsoever."

In 2014, the Desais filed suit against Scott, alleging causes of action for defamation, intentional infliction of emotional distress, and civil theft. Scott filed a pro se answer in which he asserted multiple affirmative defenses. He also counterclaimed and moved to dismiss the Desais' lawsuit under the Texas Anti-SLAPP statute. The trial court denied the motion to dismiss, and this interlocutory appeal followed.

## SCOPE OF APPEAL

Still proceeding pro se, Scott has filed a sprawling brief—121 pages in length—where he presents nine separate issues for our review. One of the issues is devoid of legal argument as it is nothing more than a quotation from a statute. Many of the other issues raise complaints without proper citations to authority or the record. Some of these issues relate to matters not raised below, and others involve general attacks on several trial court judges—none of which is helpful to this court.

Liberally construing his brief, we understand Scott's main complaint to be about the trial court's ruling on the motion to dismiss. *See Perry v. Cohen*, 272

S.W.3d 585, 587 (Tex. 2008) (per curiam) (instructing that "[a]ppellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver"). We address this issue, and no other, because it fully disposes of the appeal. *See* Tex. R. App. P. 47.1.

## ANALYSIS

### I. The Anti-SLAPP Statute

In 2011, the Texas Legislature enacted the Texas Citizens Participation Act, known more commonly as the TCPA or the Texas Anti-SLAPP statute. *See* Act of June 17, 2011, 82d Leg., R.S., ch. 341, §§ 1–2, 2011 Tex. Sess. Law Serv. 960, 960–63. The acronym SLAPP stands for "Strategic Lawsuits Against Public Participation," a term referring to legal actions that are primarily brought for the purpose of silencing citizens who are exercising their First Amendment freedoms. *See Jardin v. Marklund*, 431 S.W.3d 765, 769 (Tex. App.—Houston [14th Dist.] 2014, no pet.); Laura Lee Prather & Jane Bland, *Bullies Beware: Safeguarding Constitutional Rights Through Anti-SLAPP in Texas*, 47 Tex. Tech. L. Rev. 725, 736 (2015). The Anti-SLAPP statute attempts to protect the rights of these citizens by providing for the quick and inexpensive dismissal of meritless lawsuits. *See* Tex. Civ. Prac. & Rem. Code § 27.003(a).

To dismiss a claim under the Anti-SLAPP statute, the movant must show by a preponderance of the evidence that the claim is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association. *Id.* § 27.005(b). If this initial showing is made, the burden then shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. *Id.* § 27.005(c). Dismissal of the claim is mandatory if the nonmovant fails to satisfy this burden. *Id.* § 27.005(b). Even if the nonmovant succeeds by establishing a

4

prima facie case, the trial court must still dismiss the claim if the movant further establishes by a preponderance of the evidence each essential element of a valid defense. *Id.* § 27.005(d).

## II.    Scott's Initial Burden Under Section 27.005(b)

We begin with the threshold question of whether Scott established that the lawsuit against him was based on, related to, or made in response to his exercise of the right of free speech, the right to petition, or the right of association. Because this is a legal question, our standard of review is de novo. *See Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), *disapproved of on other grounds by In re Lipsky*, 460 S.W.3d 579 (Tex. 2015) (orig. proceeding); *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 80 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

Scott argued in his motion to dismiss that the Desais' lawsuit touched on all three rights mentioned in the Anti-SLAPP statute. We need only focus on the right of free speech. The Anti-SLAPP statute defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *See* Tex. Civ. Prac. & Rem. Code § 27.001(3). A "communication" includes "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). A "matter of public concern" includes an issue related to "(A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7).

To demonstrate the applicability of the Anti-SLAPP statute, Scott referred in his motion to more than 2200 pages of content that he allegedly stored on his

website. These pages allegedly included images, videos, audio recordings, and other files that were available through hyperlinks on the website's homepage. Scott did not attach these other pages to his pleadings or affidavits, and on appeal, he has criticized the trial court for not accepting his invitation to view these pages independently. The trial court is under no obligation, however, to examine evidence not contained within the pleadings and affidavits. *Id.* § 27.006(a) ("In determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based."). We, similarly, will only consider evidence found within the official appellate record.

The Desais attached to their pleadings an excerpted copy from Scott's website, which we have summarized in the background section above. This excerpt contains Scott's thoughts and viewpoints, as expressed in an electronic form or medium. The website accordingly qualifies as a communication for purposes of the Anti-SLAPP statute. *See AOL, Inc. v. Malouf*, Nos. 05-13-01637-CV & 05-14-00568-CV, 2015 WL 1535669, at *1–2 (Tex. App.—Dallas Apr. 2, 2015, no pet.) (mem. op.) (online article about a dentist's alleged Medicaid fraud was a communication).

The website also addresses matters of public concern. On his website, Scott openly calls for Riddhi's disbarment because, in his estimation, Riddhi is prejudiced and will lie to win a legal case. These statements relate to Riddhi's legal services, which she offers in the marketplace. *See* Tex. Civ. Prac. & Rem. Code § 27.001(7)(E); *Avila v. Larrea*, 394 S.W.3d 646, 655 (Tex. App.—Dallas 2012, pet. denied) (communication about a lawyer's handling of cases was a matter of public concern).

Scott also calls for criminal charges against Shilpi based on his investigation allegedly showing that she has committed identity theft. Liberally construed, this criminal allegation relates to both economic and community well-being. *See* Tex. Civ. Prac. & Rem. Code § 27.001(7)(B); *Malouf*, 2015 WL 1535669, at *1–2 (communication about a dentist's alleged Medicaid fraud related to community well-being); *Cortez v. Johnston*, No. 06-13-00120-CV, 2014 WL 1513306, at *6 (Tex. App.—Texarkana Apr. 16, 2014, no pet.) (mem. op.) ("Criminal allegations involve legitimate public concern."); *accord Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261–62 (9th Cir. 2013) (communication warning of questionable business practices, including possible identity theft, was a matter of public interest under California Anti-SLAPP statute).

The Desais respond with two arguments challenging the applicability of the Anti-SLAPP statute. In their first argument, they invoke the commercial speech exemption, which provides as follows:

> This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

Tex. Civ. Prac. & Rem. Code § 27.010(b).

The burden of proving the applicability of an exemption from the Anti-SLAPP statute falls on the party asserting it. *See Newspaper Holdings, Inc.*, 416 S.W.3d at 89. Here, the Desais argue that the Anti-SLAPP could not apply because Scott made his website "in order to blackmail plaintiffs and extorts [sic] money." Even if that motivation were true, it would not satisfy the proof required of the commercial speech exemption because the Desais did not show that Scott was

7

involved in any form of commercial enterprise. More specifically, they did not establish that Scott was "primarily engaged in the business of selling or leasing goods or services," or that the statements on his website arose out of "the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer." *See* Tex. Civ. Prac. & Rem. Code § 27.010(b).

In their second argument, the Desais contend that the website does not involve a matter of public concern because it does not address any controversy that the public is actively debating. However, there is no "public debate" requirement under the Anti-SLAPP statute. In fact, the Texas Supreme Court has recently held that a communication can be covered by the Anti-SLAPP statute even if the communication occurs privately over an email exchange. *See Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508–09 (Tex. 2015) (per curiam).

We conclude that the website qualifies as a communication made in connection with a matter of public concern. We also conclude that Scott has established by a preponderance of the evidence that the website forms the basis for at least two of the Desais' claims against him: the website contains the statements that are the focus of their defamation action, and the website also serves as the source of damages asserted in their claim for intentional infliction of emotional distress. As to these two claims, Scott satisfied his initial burden under the Anti-SLAPP statute.

The record does not establish, however, that the website relates in any way to the Desais' claim for civil theft. The Desais asserted this bare claim in their pleadings without alleging any additional facts whatsoever. Scott correctly filed a special exception, but the record does not reveal that he obtained a ruling. In his motion to dismiss, Scott sought the dismissal of the Desais' entire suit, but he did

not specifically address their civil theft claim. We hold that Scott did not satisfy his burden of establishing that this particular claim was subject to dismissal.

## III.    Scott's Burden to Establish a Valid Defense Under Section 27.005(d)

Anticipating that the Desais would file a response to his motion to dismiss, Scott also argued that the evidence established a valid defense, which would defeat any prima facie case that the Desais might be able to show. Scott actually argued for several affirmative defenses, but we need only focus on one, the statute of limitations. We examine this defense as it applies to each of the Desais' claims individually, applying a de novo standard of review. *See United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 430 S.W.3d 508, 511 (Tex. App.—Fort Worth 2014, no pet.).

### A.    Defamation

For defamation claims, there is a one-year statute of limitations, which begins to run from the day the cause of action accrues. *See* Tex. Civ. Prac. & Rem. Code § 16.002(a). Normally, a defamation claim accrues when the matter is published or circulated. *See Velocity Databank, Inc. v. Shell Offshore, Inc.*, 456 S.W.3d 605, 609 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). However, the discovery rule applies to an action for defamation if the defamatory statement is inherently undiscoverable or not a matter of public knowledge. *Id*. When the discovery rule applies, the limitations period begins to run when the claimant discovers, or through the exercise of reasonable care should have discovered, the existence of the defamatory statement. *See Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 636 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Generally, any defamation claim arising out of a website would accrue from the day the matter was published or circulated. *See Velocity Databank, Inc.*, 456

S.W.3d at 609 (defamation claim accrued when the offending statements were first published to the Internet). Scott alleged that his website had remained unchanged for the three years preceding his answer. The excerpted copy of the website contained within our record further demonstrated that the website was last updated in August of 2011. Therefore, the one-year limitation period would have ended in August of 2012 at the latest. Because the Desais filed their petition in 2014, well outside that period, the evidence established the applicability of a valid statute of limitations defense.

### B.     Intentional Infliction of Emotional Distress

There is a two-year statute of limitations for claims of intentional infliction of emotional distress. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a); *Zurita v. Lombana*, 322 S.W.3d 463, 473 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Scott invoked this defense in his motion to dismiss because the Desais complained of the website in 2011. The record supports his argument. In one posting on the excerpted copy of his website, Scott described how he was contacted in 2011 by a police officer, who had called him in regards to a complaint about the website. The officer revealed that the complaint had been made by Riddhi, who was specifically upset with Scott's criminal allegations against Shilpi. This evidence supports Scott's defense that the Desais had suffered their distress more than two years before they filed their lawsuit.

## IV.    The Desais' Shifted Burden

To avoid dismissal, the burden shifted to the Desais to show two things. First, because Scott established that two of the Desais' claims were based on his exercise of the right of free speech, the Desais were required to establish by clear and specific evidence a prima facie case as to each essential element of the two claims at issue. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). Second, because

Scott further established the applicability of a statute of limitations defense, the Desais were also required to overcome that defense. *Id.* § 27.005(d); *Kinney v. BCG Att'y Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *8 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.).

The Anti-SLAPP statute does not define what is meant by "clear and specific evidence" or "prima facie case," but case law has provided guidance on the understanding of these two terms. "Clear and specific evidence" refers to the quality of evidence required to establish a prima facie case. *See Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex. App.—Austin 2015, no pet.). "Clear" means unambiguous, sure, or free from doubt, and "specific" means explicit or relating to a particular named thing. *See Lipsky*, 460 S.W.3d at 590. These terms do not impose an elevated evidentiary standard, nor do they categorically reject the consideration of circumstantial evidence. *Id.* at 591.

"Prima facie case" refers to the quantum of evidence required to satisfy the nonmovant's minimum factual burden. *See Serafine*, 466 S.W.3d at 358. More specifically, the term refers to the amount of evidence that is sufficient as a matter of law to support a rational inference that an allegation of fact is true. *See Lipsky*, 460 S.W.3d at 590. We apply a de novo standard of review when deciding whether a nonmovant has satisfied her burden under the Anti-SLAPP statute. *See Rehak*, 404 S.W.3d at 727.

## A. Defamation

To establish a prima facie case of defamation, the plaintiff must show each of the following: (1) the defendant made a false statement of fact to a third party; (2) the statement was defamatory concerning the plaintiff; (3) the defendant acted negligently if the plaintiff is a private individual, or with actual malice if the plaintiff is a public official or figure; and (4) the statement caused damages, unless

the statement is defamatory per se, in which case damages may be presumed. *See Lipsky*, 460 S.W.3d at 593.

Riddhi and Shilpi filed separate affidavits addressing their allegations of defamation. Even if we assumed that these affidavits discharged their burden under Section 27.005(c), the Desais did not respond at all to Scott's limitations defense. They did not claim that the discovery rule applied, nor did they argue for a different accrual date. Because the evidence in support of the statute of limitations defense is uncontroverted, we conclude that Scott established the defense by a preponderance of the evidence.

In their motion for rehearing, the Desais argue—for the first time—that several events in 2014 effectively reset the running of their limitations clock. They assert, for instance, that Scott updated his website in August of 2014 with brand new postings. Even if we assumed that these postings were defamatory, they would represent separate and independent defamation claims from what the Desais alleged in their pleadings. *See Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 340 (Tex. App.—San Antonio 2000, pet. denied) ("Each distinct publication of a defamatory statement inflicts an independent injury from which a defamation cause of action may arise."). The claims arising out of these postings would have their own accrual dates, which incidentally fall *after* the Desais filed their live pleading and *after* Scott filed his motion to dismiss. These postings would not have revived or affected the limitations period for a different defamation claim that had accrued years earlier.

The Desais also refer in their motion to several letters that Scott sent in January of 2014, as well as other statements he made online on another website in June of 2014. The Desais argue that these letters and statements are defamatory and "republish" the statements on Scott's own website. The Desais cite to no

authority for this argument. And, as we just explained, if Scott sent these letters and made these statements at different times and for different audiences, they would represent completely different torts because they are different publications.

Scott's limitations defense focused on a defamation claim relating to just his website. Scott also swore in his amended answer that his website "has not changed in three years." *See* Tex. Civ. Prac. & Rem. Code § 27.006. The Desais did not contradict this. To the extent the Desais asserted a defamation claim that was based on Scott's website as it existed at the time of his amended answer, the claim must be dismissed because Scott established that the claim is barred by the statute of limitations. *Id.* § 27.005(d).

## B. Intentional Infliction of Emotional Distress

To recover damages for intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *See Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).

The Desais did not specifically address this cause of action in their responses or affidavits. Instead, they referred the trial court to their live pleading, which they believed was sufficient to satisfy their burden under Section 27.005(c). Focusing only on the final element of this cause of action, we conclude that the Desais' pleading was insufficient by itself.

To establish that they suffered "severe" emotional distress, the Desais were required to bring forth clear and specific evidence that they suffered distress so severe that no reasonable person could be expected to endure it. *See GTE Sw., Inc.*

13

*v. Bruce*, 998 S.W.2d 605, 618 (Tex. 1999). Generally, this requires proof of more than mere worry, anxiety, vexation, embarrassment, or anger. *See Regan v. Lee*, 879 S.W.2d 133, 136 (Tex. App.—Houston [14th Dist.] 1994, no writ).

Here, the only evidence in the Desais' pleading regarding their emotional distress is a single allegation that they endured "shame, embarrassment, humiliation, and mental anguish." This allegation does not qualify as clear and specific evidence because the Desais did not establish explicitly or with particularity how they suffered their emotional distress. *Cf. Lipsky*, 460 S.W.3d at 592–93 (affidavit failed to satisfy the Anti-SLAPP statute's requirement of "clear and specific evidence" because it was "conclusory" and "devoid of any specific facts"). This allegation also completely fails to establish that their emotional distress was "severe." *See GTE Sw., Inc.*, 998 S.W.2d at 618; *Regan*, 879 S.W.2d at 136.

Even if the Desais had established a prima facie case for each essential element of their emotional distress claim, they still, as before, did not respond at all to Scott's limitations defense. They did not dispute the evidence produced by Scott, or even allege in their petition that their claim accrued on a date within the limitations period. Because the Desais produced no evidence that would overcome a limitations defense, we conclude that Scott established his defense by a preponderance of the evidence. The trial court accordingly erred by failing to dismiss the Desais' emotional distress claim. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b), (d).

## CONCLUSION

Scott is entitled to a dismissal of the Desais' claim for defamation, based on the website, as pleaded in their original and amended petitions. Scott is also entitled to a dismissal of the Desais' claim for intentional infliction of emotional

14

distress, but not their claim for civil theft. The order denying the motion to dismiss is therefore reversed and the case is remanded for additional proceedings including, but not limited to, consideration of any claims the Desais have remaining or may choose to add, Scott's counterclaims, and an award to Scott for court costs and other expenses as the moving party under the Anti-SLAPP statute. *Id.* § 27.009.

/s/    Tracy Christopher
Justice

Panel consists of Justices Boyce, Christopher, and McCally.