**Opinion issued July 14, 2022**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00627-CV

————————————

## MICHAEL  LOWRY, Appellant

## V.

## FOX TELEVISION STATIONS, LLC; KRIV FOX 26; KTTV FOX 11; WTXF FOX 29; WOFL FOX 35; WJZY FOX 46; AND WTTG FOX 5, Appellees

---

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 2020-14375

---

## MEMORANDUM OPINION

Michael Lowry challenges the dismissal of his legal action against Fox Television Stations, LLC ("FTS") and certain FTS-owned and -operated stations under the Texas Citizens Participation Act ("TCPA" or the "Act"). *See* TEX. CIV.

PRAC. & REM. CODE §§ 27.001–.011. Lowry contends the trial court erred by dismissing his legal action because he established the essential elements of his defamation cause of action and FTS did not establish any affirmative defense. Lowry also contends the trial court erroneously awarded FTS its attorney's fees. Because we hold that Lowry failed to make a prima facie showing that FTS's statements were not substantially true, we affirm the trial court's order of dismissal.

## Background

During an investigation by the Montgomery County District Attorney's Internet Crimes Against Children Task Force ("ICAC"), law enforcement discovered child pornography and child erotica on Lowry's phone. The State charged Lowry with possession of lewd visual material of a child on March 1, 2019 and filed a motion for high bond stating that additional charges against Lowry were "being investigated."[1]

A few days later, a Houston-area television station owned and operated by FTS reported on the allegations against Lowry in a television broadcast, web article, and Facebook post. The article, which mirrored the broadcast, appeared under the headline "Woman charged with selling 2-year-old for sex leads police to child molestation suspect" and identified Lowry as the suspect. It stated that ICAC

---

[1] The State later charged Lowry for the additional offense of possession of child pornography.

2

investigators "intercepted a woman named Sarah Peters who was heading to Conroe" and had "agreed to allow an adult male to engage in sexual intercourse with her [two-year-old] daughter in exchange for $1,200." The article suggested Lowry was the man Peters planned to meet, stating: "When Peters and her daughter arrived to meet Lowry, [Peters] was taken into custody, and Child Protective Services took custody of the daughter." As stated in the article,

> That then led investigators to Lowry. [Peters] told them she allowed Lowry to gratify himself while touching her daughter. She showed them messages sent via the social media site "Kik." They discussed getting more naked pictures of the girl. He allegedly wrote to her, "The only reason I need to stop seeing you is I want you both," and "I remember you talking about Benadryl, and I imagine the things we could do with her sleeping."

> Peters admitted to exchanging child pornography with Lowry on several occasions. Numerous images were located on his phone containing items of "child pornography" and "child erotica."

According to the article, investigators also visited Lowry's home and spoke with his wife, who "showed them [Lowry's] cell phone, laptop, and thumb drive allegedly containing child pornography" and told them "she was aware of the sexual relationship between Lowry and Peters" and had asked Lowry to end the relationship when she learned "the two . . . spent the night at a hotel with Peters'[s] daughter present." In addition, the article stated that Lowry "denied having any sexual contact with the girl" but admitted to detectives that he talked with "Peters about having children together and raising [them] in an incestuous family." The article concluded

3

with a statement that an FTS reporter had attempted to speak to Lowry at his home, which was located near a school, about the charge. Lowry "smirked and shut the door" but "[h]ours later . . . was in custody."

The Facebook post at issue included a photo of Lowry above the headline "Woman charged with selling 2-year-old for sex leads police to accused child molester" and this summary of the allegations:



FOX 26 Houston
March 4, 2019 ·

WARNING: Graphic Details Ahead
Michael Lowry has been arrested for his depraved crimes against a 2-year-old girl.
The mother was taken into custody for agreeing to allow Lowry to engage in sexual intercourse with her two year old daughter for $1,200, among his other sexual acts and pornography exchanges.
The infant girl is now in the custody of Child Protective Services.

Before publishing its reporting, FTS obtained court documents from Lowry's criminal case, including the complaint, probable cause affidavit, and motion for high bond. Like the reporting, the probable cause affidavit stated that Peters drew the attention of investigators when she "agreed to allow an adult male to engage in sexual intercourse with her [two-year-old] daughter in exchange for $1,200." But it did not specifically identify Lowry as the man Peters planned to meet. Instead, the probable cause affidavit stated that Peters admitted in a custodial interview that Lowry previously paid her $200 and agreed not to "beat the crap" out of her in return for being allowed to hold the hand of Peters's daughter while he "jacked off." Peters

4

further admitted that she had "exchanged child pornography with [Lowry] on several occasions."

The probable cause affidavit detailed messages Lowry sent to Peters on Kik, in which he admitted, among other things:

- telling Peters that "I don't trust myself around her [referencing Peters's daughter]," that "I want you both," and that "[o]ur time together is the most erotic thing I've ever done and still think about it almost every day";

- using Peters's daughter to get sexually aroused;

- "tasting" Peters's daughter and "touching her while jacking off";

- having "pics" of Peters's daughter, but "[n]ot enough"; recalling Peters talking about Benadryl and, in response, imagining "all the things we could do with [the child] sleeping"; and

- thinking "about coaxing [the child] to put her mouth on me."

The probable cause affidavit also referenced additional, graphic Kik messages expressing Lowry's desire to engage in sexual activities with Peters's daughter.

Further, according to the probable cause affidavit, investigators spoke directly with Lowry, who "denied any sexual contact with Peters'[s] daughter" but admitted he talked to Peters about having children in an incestuous family. Investigators obtained a search warrant for Lowry's phone and laptop and found images classified as "child pornography" and "child erotica." The probable cause affidavit described the images as depictions of female children between the ages of nine and twelve.

In his lawsuit for "defamation, libel, and slander" against FTS and its affiliated stations,[2] Lowry alleged that the article and Facebook post did not accurately report the allegations against him. Specifically, Lowry complained that these three statements from the article were false:

- "Woman charged with selling [two-year-old] for sex leads police to child molestation suspect. His name is Michael Lowry and when we rang, he opened the door to his Southeast Houston home."

- "[A] woman named Sarah Peters . . . agreed to allow an adult male to engage in sexual intercourse with her [two-year-old] daughter in exchange for $1,200. When Peters and her daughter arrived to meet Lowry, she was taken into custody[.]"

- "They [Peters and Lowry] discussed getting more naked pictures of the girl."

He also asserted that a fourth statement contained in the Facebook post was false— the "WARNING" that Lowry "ha[d] been arrested for his depraved crimes against a [two-year-old] girl" and that "the mother was taken into custody for agreeing to

---

[2] The FTS owned and operated stations Lowry named as defendants include the Houston-area affiliate, KRIV Fox 26, and five other stations he alleged published the same false statements: KTTV Fox 11, WTXF Fox 29, WOFL Fox 35, WJZY Fox 46, and WTTG Fox 5. In its TCPA motion to dismiss, FTS asserted that none of these stations are legal entities capable of being sued and that its arguments for dismissal under the TCPA applied equally to all entities. Lowry has not challenged those assertions.

allow Lowry to engage in sexual intercourse with her [two-year-old] daughter for $1,200, among his other sexual acts and pornographic exchanges."[3]

The crux of Lowry's complaint was that the article and Facebook post misidentified him as the person planning to meet Peters and pay her $1,200 to engage in sexual activity with her daughter. In addition, he complained that the article and Facebook post falsely asserted that he had requested nude photos of Peters's daughter and suggested he was charged with child molestation, rather than possession of lewd material of a child. According to Lowry, "[a] charge of possession of child pornography is nowhere equivalent to a charge of child molestation and trafficking, which is what [FTS] accused me of when they report[ed] that I attempted to pay to sexually interact with a toddler." Lowry alleged that FTS "had an obligation . . . to ensure the accuracy of such inflammatory and damaging information prior to its publication."

FTS moved to dismiss Lowry's claims under the TCPA, asserting that he could not provide clear and specific evidence of the essential elements of his claims based on FTS's speech because the complained-of statements were (1) accurate reports of third-party allegations about a matter of public concern and privileged as

---

[3]     Lowry also sued for negligence, but he has not challenged the trial court's dismissal of that claim on appeal.

a matter of law; (2) non-actionable opinion; (3) literally or substantially true; (4) not made with actual malice; and (5) barred by limitations.

After a hearing, the trial court granted FTS's motion, dismissed all of Lowry's claims, and ordered that FTS recover its attorney's fees.

## The TCPA

Lowry argues that his defamation cause of action against FTS was not subject to dismissal under the TCPA because (1) he established by clear and specific evidence a prima facie case for the essential elements of defamation and (2) FTS did not establish its affirmative defenses as a matter of law. In addition, Lowry argues that FTS is not entitled to attorney's fees under the TCPA because his defamation cause of action should not have been dismissed.

## B.    Legal Standard for Dismissal

The TCPA's purpose is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law," while simultaneously protecting an individual's right "to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002; *see In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding) (TCPA's purpose is "to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits").

8

To be entitled to TCPA dismissal, a defendant has the initial burden to "demonstrate[ ] that the legal action is based on or is in response to" the defendant's exercise of the right to petition, association, or free speech. TEX. CIV. PRAC. & REM. CODE § 27.005(b). If the defendant satisfies this initial burden, the burden shifts to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Dismissal of the legal action is required if the plaintiff fails to meet this burden or if the defendant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(d). Whether the parties have met their respective burdens is a question of law that we review de novo. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Baumgart v. Archer*, 581 S.W.3d 819, 825 (Tex. App.—Houston [1st Dist.] 2019, pet. denied).

## C.    Prima Facie Case

Lowry's defamation suit against FTS for its reporting of his alleged criminal activity is a legal action based on FTS's exercise of the right of free speech on a matter of public concern. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(3) (defining "exercise of the right of free speech" to mean "a communication made in connection with a matter of public concern"); *id.* § 27.001(7) (defining "matter of public concern" to include "a matter of political, social, or other interest to the community" or "a subject of concern to the public"); *see also Baumgart*, 581 S.W.3d at 826 ("The

9

courts routinely hold that matters related to the reporting of crimes and related proceedings are matters of public concern." (quotation omitted)). Thus, under the TCPA's decisional framework, FTS was entitled to dismissal unless Lowry established by clear and specific evidence a prima facie case for each element of a defamation cause of action. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b), (c).

Ordinarily, truth is a defense to defamation, meaning a plaintiff need not prove falsity. *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 713 (Tex. 2016) ("At common law, truth was a defense in a suit for defamation; falsity was not an element of the action."); *see also Lipsky*, 460 S.W.3d at 593 (elements of defamation typically include (1) publication of false statement of fact to third party, (2) that was defamatory concerning plaintiff, (3) with requisite degree of fault, and (4) damages, in some cases). But the burden of proof on the issue of falsity shifts to the plaintiff when the complained-of statements are made by a media defendant over a matter of public concern. *See KBMT Operating*, 492 S.W.3d at 714–15; *see also D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) ("Because of the importance of cultivating and protecting freedom of expression, the plaintiff bears the burden of proving falsity if the alleged defamatory statements were made by a media defendant over a matter of public concern.").

Here, FTS shifted the burden of proof on the issue of falsity by demonstrating that it is a part of the media and that the complained-of statements in the article and

10

Facebook post were an account of official proceedings of public concern. *See, e.g.*, *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (recognizing criminal allegations relate to matter of public concern); *Cortez v. Johnson*, No. 06-13-00120-CV, 2014 WL 1513306, at *6 (Tex. App.—Texarkana Apr. 16, 2014, no pet.) (mem. op.) ("Criminal allegations involve legitimate public concern."); *Goss v. Hous. Cmty. Newspapers*, 252 S.W.3d 652, 655 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Official statements from law enforcement . . . trigger application of the privilege."). Consequently, Lowry's burden under the TCPA included proof that FTS's statements were false—that is, that the gist of the statements was not substantially true. *KMBT Operating*, 492 S.W.3d at 715 ("[A] private individual who sues a media defendant for defamation over a report on official proceedings of public concern has the burden of proving that the gist of the report was not substantially true—that is, that the report was not a fair, true, and impartial account of the proceedings.").

"A statement need not be perfectly true; as long as it is substantially true, it is not false." *Id.* at 714. Substantial truth may be measured by whether the FTS article or Facebook post, taken as a whole, is more damaging to Lowry's reputation than a truthful report would have been. *Id.*; *see also Neely v. Wilson*, 418 S.W.3d 52, 63 (Tex. 2013). This requires determining the import of the article or Facebook post as a whole—its gist to the ordinary reader—and comparing it to a truthful report. *KMBT*

11

*Operating*, 492 S.W.3d at 714. In making this determination, we do not compare the gist of the report to the actual facts; instead, we must determine whether it is a "fair, true, and impartial account of the proceedings" reported. *Id.* at 715; *Hall*, 579 S.W.3d at 381 (plaintiff cannot meet TCPA burden "with proof that the report was not a substantially true account of the actual facts outside the proceedings"). Whether a publication is not substantially true depends on a "reasonable person's perception of the entirety of a publication and not merely on individual statements." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000).

The divergences identified by Lowry are that FTS's article and Facebook post falsely stated that he (1) attempted to pay $1,200 to engage in sexual activity with a two-year-old, (2) had in his possession and additionally requested of Peters nude pictures of the two-year-old, and (3) was arrested for "child molestation" or "depraved crimes against a [two-year-old] girl." According to Lowry, the gist of an arrest for possession of lewd visual material of a child is not the same as an arrest for child molestation, which he describes as "paying to engage in sexual activities with a minor." We disagree. Although the errors in the details of the FTS reporting may show poor research or editing, they do not render FTS's reporting substantially untrue because the gist or sting of the story is correctly conveyed. *See Turner*, 38 S.W.3d at 115.

12

A comparison of the probable cause affidavit on which FTS based its reporting shows that FTS's reporting substantially mirrored the allegations against Lowry made by the State in the criminal case. For instance, even though the probable cause affidavit did not identify Lowry as the man who agreed to pay Peters $1,200 to engage in sexual activity with her daughter, the probable cause affidavit plainly stated that Lowry:

- was arrested because of the ICAC investigation of Peters's agreement to accept $1,200 as payment for a sexual exchange with her daughter;

- was accused of paying Peters $200 on a different occasion to engage in sexual activity with her daughter;

- was alleged to have engaged in other prior sexual encounters with Peters's daughter and solicited further encounters; and

- was found with multiple images of child pornography or "child erotica" and arrested for that conduct.

Thus, whether Lowry was accused of paying Peters $1,200 to engage in sexual activity with her daughter on one occasion or $200 on a different occasion and whether he was arrested for agreeing to pay money to engage in sexual activity with a child or for possessing lewd visual material of a child, the gist of the statements remains the same considering the allegations in the probable cause affidavit. *See, e.g.*, *Herald-Post Publ'g Co. v. Hill*, 891 S.W.2d 638, 639 (Tex. 1994) (holding newspaper report that witness at trial accused attorney and investigator of threatening her when only investigator actually made threat held substantially true

13

as matter of law); *McIlvain v. Jacobs*, 794 S.W.2d 14, 15–16 (Tex. 1990) (holding report was substantially true despite several minor mischaracterizations in broadcast regarding public integrity investigation of city's water maintenance division); *Dolcefino v. Turner*, 987 S.W.2d 100, 115 (Tex. App.—Houston [14th Dist.] 1998) (holding insurance scam of $1.7 million was no less defamatory than misstatement that scam involved $6.2 million), *aff'd*, 38 S.W.3d 103 (Tex. 2000); *Rogers v. Dallas Morning News, Inc.*, 889 S.W.2d 467, 473 (Tex. App.—Dallas 1994, writ denied) (holding article on charity funds was not false despite incorrectly stating charity spent 10% of donations on actual services rather than 43%); *Downer v. Amalgamated Meatcutters & Butcher Workmen of N. Am.*, 550 S.W.2d 744, 747 (Tex. App.—Dallas 1977, writ ref'd n.r.e.) (holding defendant's published statement plaintiff had embezzled $2,187.77 instead of $840.73 was substantially true).

Lowry's assertion that the FTS article falsely stated that he requested nude photos of Peters's daughter when the probable cause affidavit stated only that he admitted having some photos of the child, without regard to whether the child was clothed, and asking for more also fails to demonstrate falsity. A reference to Lowry requesting nude photographs would not subject Lowry to more opprobrium than a literally true statement. *See, e.g.*, *Collins v. Sunrise Senior Living Mgmt., Inc.*, No. 01-10-01000-CV, 2012 WL 1067953, at *16 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, no pet.) (mem. op.) (describing substantial truth doctrine as precluding

14

liability when alleged defamatory statement was no more damaging to plaintiff's reputation, in mind of average listener, than truthful statement would have been); *Langston v. Eagle Printing Co.*, 797 S.W.2d 66, 69 (Tex. App.—Waco 1990, no writ) (concluding "statement is substantially true even if it greatly exaggerates plaintiff's misconduct, as long as the average reader would not attach any more opprobrium to the plaintiff's conduct merely because of the exaggeration"); *Crites v. Mullins*, 697 S.W.2d 715, 717 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) ("A showing of substantial truth will defeat an allegation of libel, even where the misconduct charged may be exaggerated, if no more opprobrium would be attached to appellant's actions merely because of such exaggeration.").

Having compared FTS's article and Facebook post to the probable cause affidavit on which they were based, we hold that the FTS reporting is substantially true. Therefore, Lowry failed to establish a prima face case for each element of his defamation claim, and the trial court did not err in dismissing the claim under the TCPA.[4] *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c).

## D. Attorney's Fees

The TCPA provides that if a trial court orders dismissal of a legal action under the Act, the court "shall award to the moving party court costs and reasonable

---

[4] Given this holding, we need not decide whether FTS established an affirmative defense as a matter of law. *See* TEX. R. APP. P. 47.1.

attorney's fees incurred in defending against the legal action[.]" TEX. CIV. PRAC. & REM. CODE § 27.009(a). Lowry argues the trial court erred by awarding FTS attorney's fees under this provision because his legal action against FTS should not have been dismissed. Because we have concluded that the trial court did not err by dismissing Lowry's claim and because Lowry does not assert any other basis for error in the fees award, we overrule Lowry's third issue.

## Conclusion

We affirm the trial court's order of dismissal.


Amparo Guerra
Justice

Panel consists of Justices Kelly, Goodman, and Guerra.

16