**Affirmed and Memorandum Opinion filed August 11, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00734-CV

**BRANDON MCDANIEL, JOUNTE MCDANIEL, JONATHAN K. POULARD, KIMBERLY D. POULARD, AND AMERICAN GOLD RESERVE, LLC, Appellants**

**V.**

**NATIONWIDE COIN & BULLION RESERVE, INC., Appellee**

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-17064**

## MEMORANDUM OPINION

Appellants Brandon McDaniel, Jounte McDaniel, Jonathan K. Poulard, Kimberly D. Poulard, and American Gold Reserve, Inc. (the "AGR Parties") bring this interlocutory appeal[1] of the trial court's order denying their motion to dismiss

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(12) (authorizing interlocutory appeal of order denying motion to dismiss filed under TCPA Section 27.003).

under the Texas Citizens Participation Act ("TCPA").[2] *See* Tex. Civ. Prac. & Rem. Code § 27.002, *et seq.* In four issues, the AGR Parties challenge the trial court's ruling arguing: (1) the TCPA applies because the challenged claims relate to communications in furtherance of the AGR Parties' right of association and right of free speech and are covered by the TCPA; (2) appellee Nationwide Coin & Bullion Reserve, Inc.'s ("Nationwide") commercial speech exemption argument is foreclosed; (3) Nationwide failed to meet its burden to present "clear and specific" evidence in support of each element of its claims; and (4) the trial court erred by denying the motion to dismiss under the TCPA. Because Nationwide's causes of action fall within the commercial speech exception to the TCPA, we affirm the trial court's order denying the motion to dismiss.

## I. BACKGROUND

Nationwide markets and sells precious metals including gold, silver, and platinum coins, and has been in business since 2009. Nationwide is owned or controlled by Lawrence Kuykendall. Nationwide hired Kuykendall's stepsons appellants Brandon McDaniel ("McDaniel") and Jounte McDaniel ("Jounte"). McDaniel, who began work for Nationwide in 2010, was responsible for promoting and supporting sales to Nationwide's customers.

In March 2016, Jounte, left Nationwide and formed a competitor business, appellant American Gold Reserve, LLC ("AGR"). AGR markets and sells precious metals to a retail market, including gold and silver coins, just as Nationwide does.

---

[2] The Texas Legislature amended certain provisions of the TCPA in 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–12, 2019 Tex. Gen. Laws 684, 687 (current version at Tex. Civ. Prac. & Rem. Code §§ 27.001–.011). The amendments became effective September 1, 2019. *Id.* at §§ 11–12. Because this suit was filed before the effective date of the amendments, this case is governed by the statute as it existed before the amendments. *See id.* All our citations are to the TCPA as it existed prior to September 1, 2019, unless otherwise stated.

Appellant Kimberly D. Poulard is the listed on AGR corporate documents filed with the State of Texas as the Secretary and a Manager of AGR. Appellant Jonathan K. Poulard is the Treasurer of AGR. Kimberly and Jonathan are the aunt and uncle of McDaniel and Jounte.

McDaniel remained at Nationwide, and on March 23, 2016, he signed an Employment Agreement (the "Agreement") with Nationwide. In the Agreement, McDaniel specifically recognized and acknowledged that the position was one of trust and confidence and that, as a result, he had access to, and was given specialized education and confidential, proprietary information of Nationwide. In exchange, as part of the consideration for the compensation and benefits to be paid to McDaniel, and to protect Nationwide's interest in its confidential information and business relationships, McDaniel agreed to be bound by certain non-compete and non-interference terms in the Agreement. The Agreement provisions provide, in material part, that for a one-year period after the Agreement terminated, McDaniel would not work for any of Nationwide's competitors, and would not solicit any of Nationwide's customers within any geographic area or market where Nationwide was conducting business or had conducted business during the preceding two years.

In December 2017, Kuykendall allegedly cut McDaniel's pay at Nationwide in half. On December 18, 2017, McDaniel resigned from Nationwide and began working for AGR. On that same date, AGR's certificate of formation was amended to include McDaniel as a Managing Member of the company.

After McDaniel's departure from Nationwide, Nationwide allegedly began receiving calls from customers about calls the customers had received from AGR. The customers claimed that AGR was aware of their purchase history with Nationwide and that AGR claimed Nationwide had overcharged them in transactions. These calls resulted in several customers initiating refund claims with

3

Nationwide. It is believed that AGR then resold the same or similar coins to Nationwide's customers.

In March 2018, Nationwide sued McDaniel for breach of the employment agreement and breach of fiduciary duties. Additionally, Nationwide sued all defendants (McDaniel, Jounte, Jonathan, Kimberly, and AGR) for trade secret misappropriation, tortious interference with prospective business relations, unfair competition by misappropriation, injunctive relief, and liquidated damages. The trial court granted Nationwide's application for a temporary restraining order against McDaniel and set the date for a temporary injunction hearing. The AGR Parties filed an answer that generally denied the allegations against them and responded to the application for temporary injunction. They also moved to dismiss Nationwide's suit under the TCPA.

Nationwide filed a lengthy response and asserted three reasons to deny the motion to dismiss. First, Nationwide argued that its legal action falls within the ambit of the TCPA's commercial speech exemption. Second, the AGR Parties cannot show by a preponderance of the evidence that their claims relate to their exercise of free speech or association. And third, Nationwide argued that the pleadings and evidence established a *prima facie* case for every essential element for each of Nationwide's causes of action. The AGR Parties filed a reply.

On August 13, 2018, without stating the basis for the ruling, the trial court issued an order denying the AGR Parties' motion to dismiss. The AGR Parties now challenge that ruling in this interlocutory appeal.

## II. ANALYSIS

## A. Standard of Review and Governing Law

We consider whether the trial court properly refused to dismiss Nationwide's suit under the TCPA, which is codified in Chapter 27 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code §§ 27.001--.011.1. The TCPA is an anti-SLAPP law; "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Fawcett v. Grosu*, 498 S.W.3d 650, 654 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (op. on reh'g). The TCPA is intended "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002; *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The TCPA "protects citizens from retaliatory lawsuits that seek to intimidate or silence them" from exercising their First Amendment freedoms and provides a procedure for the "expedited dismissal of such suits." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). We construe the TCPA liberally to effectuate its purpose and intent fully. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017); Tex. Civ. Prac. & Rem. Code § 27.011(a).

To effectuate the statute's purpose, the TCPA provides a three-step decisional process to determine whether a lawsuit or claim should be dismissed under the statute. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). The TCPA mandates that a trial court deciding a motion to dismiss "shall consider the pleadings and supporting and opposing affidavits" filed by the parties. Tex. Civ. Prac. & Rem. Code § 27.006(a). Under the first step, the trial court

5

must dismiss the action "if the moving party shows by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association. *Id*. § 27.005(b); *Creative Oil & Gas, LLC*, 591 S.W.3d at 132; *In re Lipsky*, 460 S.W.3d at 586–87. "But under the second step, the court may not dismiss the action if the non-moving party 'establishes by clear and specific evidence a *prima facie* case for each essential element of the claim.'"[3] *Creative Oil & Gas, LLC*, 591 S.W.3d at 132 (quoting Tex. Civ. Prac. & Rem. Code § 27.005(c)). "Under the third step, the movant can still win dismissal if he establishes 'by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.'" *Id*. (quoting § 27.005(d)).

A non-movant can avoid the TCPA's burden-shifting requirements by showing that one of the act's several statutory exemptions applies. *See* Tex. Civ. Prac. & Rem. Code § 27.010. For instance, as asserted in this case, the commercial speech exemption removes certain commercial speech from the TCPA's protections. *See* id. § 27.010(b). Whether the parties have met these respective burdens is a question of law that we review de novo. *Creative Oil & Gas, LLC*, 591 S.W.3d at 132; *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

In the trial court, the AGR Parties were the TCPA movants, where they argued that Nationwide's legal action was a retaliatory suit based on their exercise of the right of association and freedom of speech. For the sake of argument, we assume without deciding that the AGR Parties were correct and that they satisfied their initial

---

[3] "Prima facie case" refers to the quantum of evidence required to satisfy the nonmovant's minimum factual burden and generally refers to the amount of evidence that is sufficient as a matter of law to support a rational inference that an allegation of fact is true. *See id*. at 590; *Deaver v. Desai*, 483 S.W.3d 668, 675-76 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

burden. The question then becomes whether Nationwide satisfied its burden as the nonmovant.

**B. Commercial Speech Exemption of the TCPA**

Attacking the TCPA motion on multiple fronts, Nationwide argued that it established a prima facie case for its legal action, and that its legal action was exempt under the TCPA's commercial speech exemption. We need only address the commercial speech exemption because it is dispositive. *See Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 213 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

First, the AGR Parties argue that Nationwide waived its commercial speech exemption because, in the trial court, Nationwide relied on a case which did not apply the "intended audience" element, which has since been made part of the commercial speech exemption requirements by the Supreme Court of Texas. *See Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (per curiam). In the trial court, Nationwide quoted the exemption as codified in section 27.010(b), and argued it applied to this case. Nationwide also cited *Castleman* in arguing that the exemption applies. Thus, there was no waiver of its application. To the extent the AGR parties argue that Nationwide did not prove the intended audience element, as shown below, they are mistaken.

Next, the AGR Parties contend that that the commercial speech exemption only applies to Nationwide's claims for tortious interference, not their other causes of action. As support, they cite this court's opinion in *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601 (Tex. App.—Houston [14th Dist.] Jun. 26, 2018, pet. denied) (mem. op.), in which this court found the commercial speech exemption applied to a tortious interference cause of action based on alleged intentional interference with customers but did not apply to

7

a tortious interference claim based on hiring. *Id.* at *9. Contrary to the AGR Parties' argument, this court did not determine that the commercial speech exemption only applies to tortious interference claims. Under the facts of the *Abatecola* case, the commercial speech exemption did not apply to a third-party tortious interference claim based on normal hiring practices as opposed to a claim based on alleged knowing interference with customers. *Id.* Indeed, this court recently determined that the commercial speech exemption applied to a breach-of-contract claim premised on a former employee's breach of a non-compete clause. *See Hieber*, 591 S.W.3d at 213.

The AGR Parties also argue that *Castleman* rejects Nationwide's interpretation of the commercial speech exemption (i.e., that Nationwide's claims for trade secrets and non-compete fall within the commercial speech exemption). *See* 546 S.W.3d at 688. The AGR Parties contend that Nationwide failed to address the critical elements of the exemption. They further assert that the commercial speech exemption is "categorically inapplicable to the trade secret and non-compete claims, as well as the claims involving communications with vendors." The facts in *Castleman* are distinguishable from the facts in this case. In *Castleman*, the defendant made disparaging statements about the plaintiff related to plaintiff's customer service. *Castleman,* 546 S.W.3d at 691. The supreme court held that the defendant did not have anything to gain from negative comments about plaintiff because the defendant was a customer of the plaintiff and not a seller of goods or services. *See id.* Based on this holding, the TCPA was applicable and the commercial speech exemption did not apply. *See id.* Here, however, the AGR Parties are not customers of Nationwide. Rather, the AGR Parties are competitors selling the same goods and services. Therefore, AGR Parties' reliance on *Castleman* is misplaced.

The commercial speech exemption provides that the TCPA "does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer." Tex. Civ. Prac. & Rem. Code § 27.010(b).

To establish this exemption, the nonmovant must prove: (1) the movant was primarily engaged in the business of selling or leasing goods, services, or an insurance product or services; (2) the movant made the statement or engaged in the conduct on which the claim is based in the movant's capacity as a seller or lessor of those goods, services, or insurance product or services; (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods, services, or insurance product the movant provides; and (4) the intended audience of the statement or conduct was an actual or potential customer of the movant for the kind of goods, services, or insurance product the movant provides. *See Castleman*, 546 S.W.3d at 688. The nonmovant must prove these elements by a preponderance of the evidence. *See Abatecola*, 2018 WL 3118601, at *10. In deciding whether the nonmovant has satisfied that burden, the scope of our review includes the pleadings and any supporting affidavits, both of which are taken as evidence in the TCPA context. *See* Tex. Civ. Prac. & Rem. Code § 27.006; *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We also review this evidence in the light most favorable to the nonmovant. *See Brugger v. Swinford*, No. 14-16-00069-CV, 2016 WL 4444036, at *2 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.).

### 1. Engaged in the business of selling or leasing goods

Beginning with the first element—whether the AGR Parties were primarily engaged in the business of selling goods, services, or insurance products or

services—it is uncontested that this case is a dispute between two companies that market and sell precious metals, including gold, silver, and platinum coins. Nationwide produced evidence about McDaniel's professional responsibilities at his former job and his actions at his current job. Nationwide and AGR are companies engaged in the business of selling goods or services. In its pleadings, Nationwide pled that McDaniel "served as the sales manager and was responsible for promoting and supporting sales to Nationwide's customers." The day McDaniel resigned from Nationwide, AGR amended its corporate documents to add McDaniel as a Manager of the company. Nationwide further pleaded:

> Almost immediately following Defendant Brandon's [McDaniel's] departure from Nationwide, Nationwide began receiving calls from customers about calls the customers received from American. The customers claimed that American was aware of their purchase history with Nationwide and that American claimed Nationwide has overcharged them in prior transactions. These calls resulted in several customers initiating refund claims with Nationwide. It is believed that American then resold the same or similar coins to Nationwide.

In addition to its pleadings, Nationwide relied on an affidavit from Daniel Fogo, the Compliance Director of Nationwide, who attested that "[t]he individual [appellants] in this lawsuit are using the Employer Confidential Information obtained by [appellant] McDaniel to contact and encourage former and prospective customers of Nationwide, as well as Nationwide's supplie[r]s, to conduct business with [AGR] instead of Nationwide." Specifically, Fogo, attested that after McDaniel left Nationwide, the AGR Parties solicited a client of Nationwide's (i.e., Elaine Phelps) and succeeded in selling her approximately $100,000.00 in gold and silver coins. The affidavit of Anthony Guilbeau confirms this transaction. When combined with the pleadings, this evidence is more than sufficient to establish that the AGR Parties were primarily engaged in the business of selling goods when they contacted Nationwide customers.

**2. Made the statement or engaged in the conduct on which the claim is based in the movant's capacity as a seller or lessor of those goods**

For the second element, Nationwide was required to show that its claim was based on either statements that the AGR Parties made in their capacity as marketing and selling precious metals including gold, silver, and platinum coins. The pleadings and attached affidavits establish both bases. Nationwide's pleadings allege that McDaniel was given access to Nationwide trade secret and employer confidential information. Fogo's affidavit attests that McDaniel disclosed Nationwide's trade secret and employer confidential information to AGR for use in AGR's competing business. Fogo further attests that "[t]he individual Defendants in this lawsuit are using the Employer Confidential Information obtained by Brandon McDaniel to contact and encourage former and prospective customers of Nationwide, as well as Nationwide's supplies, to conduct business with American Gold instead of Nationwide." As set forth above, after McDaniel left Nationwide's employment, AGR successfully solicited Phelps, a Nationwide customer, to purchase gold and silver coins.

**3. Statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the movant provides**

For the third element, Nationwide was required to show that the statement or conduct at issue arose out of a commercial transaction involving the kind of services that the AGR Parties provide. Nationwide pleaded that after McDaniel left Nationwide with confidential information, the AGR parties began contacting Nationwide customers informing them they had been overcharged. Fogo's affidavit attests, "When Brandon [McDaniel] left the employ of Nationwide in December 2017, Nationwide began to receive telephone calls from some of its customers complaining they were being contacted on behalf of American Gold [AGR]." He further attested, "Other customers called Nationwide to return gold and/or silver

11

coins they had purchased, requesting refunds so they could purchase the same coins from American Gold [AGR] at a better price." Each of Nationwide's causes of action arose out of a commercial transaction involving goods and services that both the AGR Parties and Nationwide provide (*i.e.*, marketing and selling precious metals, including gold, silver, and platinum coins to a retail market). *See Callison v. C & C Personnel, LLC*, No. 09-19-00014-CV, 2019 WL 3022548, at *6 (Tex. App.—Beaumont July 11, 2019, pet. denied) (mem. op.) ("Utilizing confidential or proprietary information from a previous employer while working for a new employer to target and secure the same customers satisfies this element").

> **4.    Intended audience of the statement or conduct was an actual or potential customer of the movant for the kind of goods or services the movant provides**

To support the fourth element, Nationwide was required to show that the intended audience of the AGR Parties' conduct was an actual or potential customer for the kind of goods or services that the AGR Parties provide. Again, Nationwide established through its pleadings and evidence that, after McDaniel joined AGR, the AGR Parties targeted Nationwide's existing customers as their potential customers. It is undisputed that both AGR and Nationwide operate substantially similar businesses.

Nationwide's causes of action are based on the conduct of the AGR Parties' targeting potential and existing Nationwide customers in violation of the non-compete clause in McDaniel's contract. By pleading a breach of the non-compete provision and McDaniel's breach of fiduciary duties that accompany that provision, Nationwide established that the intended audience of the AGR Parties' conduct was actual or potential customers for the kind of goods or services Nationwide provides. Fogo's supplemental affidavit and Nationwide's pleadings establish that the intended audience of the AGR Parties' statements and conduct

12

were potential customers for their goods; therefore, Nationwide has shown that the AGR Parties' complained of conduct falls within the commercial speech exemption to the TCPA.

Viewing the evidence in the light most favorable to Nationwide, we conclude the evidence establishes by a preponderance of the evidence that Nationwide's legal action is exempt under the TCPA's commercial speech exemption. Because this conclusion fully supports the trial court's ruling, we need not consider the parties' remaining arguments. *See* Tex. R. App. P. 47.1.

### III. CONCLUSION

We affirm the trial court's denial of the AGR Parties' TCPA motion to dismiss.

/s/     Margaret "Meg" Poissant
Justice

Panel consists of Christopher, Spain, and Poissant.