Opinion filed June 18, 2026



In The

# Eleventh Court of Appeals

_____

## No. 11-25-00356-CV
_____

## EDDIE PUGH, Appellant

## V.

## RISE CHURCH ABILENE, INC.; RISE DISCIPLESHIP; AND REYNALDO SANDOVAL, Appellee

**On Appeal from the 42nd District Court**
**Taylor County, Texas**
**Trial Court Cause No. 52301-A**

## M E M O R A N D U M   O P I N I O N

Appellant, Eddie Pugh, appeals the trial court's final judgment, wherein it granted Appellees' motion to dismiss pursuant to Rule 91a of the Texas Rules of Civil Procedure and dismissed all causes of action against Appellees, Rise Church Abilene, Inc., Rise Discipleship (Rise), and Reynaldo Sandoval. *See*

TEX. R. CIV.P. 91a. Pugh, appearing pro se, presents three issues on appeal, asserting that the trial court erred by:

(1) permitting and relying on "fact-based merits arguments" during the 91a hearing;

(2) ruling on Appellees' 91a motion contesting his second amended petition, which was superseded by his third amended petition at the time of the hearing; and

(3) dismissing causes of action on the grounds of standing and limitations, which "depended on disputed facts."

We affirm in part and reverse and remand in part.

I. *Factual and Procedural History*

A. *The Pleadings*

Pugh's original petition alleged four causes of action against the City of Abilene, Taylor County, and Appellees. These causes of action included: (1) "[v]iolation[s] of the Texas Health & Safety Code § 247.021 and [Texas Administrative Code] Title 26 § 564.402," (2) "Human Trafficking and Forced Labor under Tex. Penal Code § 20A.02 and 18 U.S.C. § 1589," (3) "Civil Rights Violations under 42 U.S.C. § 1983," and (4) "Negligence and Gross Negligence." He also requested a temporary restraining order to prevent Rise and Sandoval from operating residential treatment facilities and to prohibit the City of Abilene and Taylor County from referring or ordering individuals thereto. Pugh alleged that, in 2019, he "entered Rise Discipleship and was subjected to forced labor, discipline, denial of prescribed medication, and coercion under the guise of faith-based rehabilitation." He asserted that in 2023, he became aware that Rise was allegedly "operat[ing] as unlicensed halfway houses," and that despite this information, the City of Abilene allowed its unlawful operation and Taylor County judges continued to send individuals to Rise.

2

Pugh later filed a first amended petition, which set out the elements for the issuance of a temporary restraining order. He then filed a notice of nonsuit without prejudice, withdrawing his claims against the City of Abilene and Taylor County, which was later granted. Thus, the City of Abilene and Taylor County are not parties to this appeal.

Pugh subsequently filed a second amended petition asserting new causes of action against Appellees, which included: (1) a request for injunctive relief "expressly authorized by [Section] 140A.002" of the Texas Civil Practice and Remedies Code (Civil Racketeering) for human trafficking and forced labor; (2) false imprisonment; (3) "Assault/Battery and Invasion of Privacy (Strip Searches)"; (4) intentional infliction of emotional distress "[i]n the alternative and as a gap-filler claim," (5) negligence, gross negligence, and negligent hiring, supervision, and retention, (6) "false, misleading, or deceptive acts or practices under Section 17.46 of the Deceptive Trade Practices Act (DTPA); and (7) licensing noncompliance as unlawful conduct amounting to negligence per se. He maintained his requests for a temporary restraining order and a preliminary injunction in the second amended petition, but he later withdrew those requests.

B. *Appellees' Rule 91a Motion to Dismiss*

In response to his second amended petition, Appellees jointly filed a motion to dismiss pursuant to Rule 91a. *See id*. The motion provided several grounds upon which each cause of action in Pugh's second amended petition should be dismissed. Appellees argued that the trial court should dismiss the causes of action against them because they have no basis in law. TEX. R. CIV. P. 91a.1. They then challenged each specific cause of action and provided an explanation as to why each had no basis in law.

Appellees first asserted that Chapter 140A of the Texas Civil Practice and Remedies Code provided no private right to assert a cause of action, and that only

the Attorney General was permitted to bring a claim pursuant to Section 140A.101. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 140A.002 (West Supp. 2025), § .101. (West 2019). Appellees asserted that Pugh's claim for intentional infliction of emotional distress was impermissible because Pugh asserted it as a "gap-filler" that encompassed no conduct outside of other, traditional torts. As for the claim that licensing noncompliance was negligence per se, Appellees asserted that Chapter 464 of the Health and Safety Code only permitted such licensing issues to be brought by the Attorney General and provided no mechanism for private enforcement.

Appellees argued that Pugh lacked standing to bring the claims of intentional infliction of emotional distress; negligence; licensing noncompliance as negligence per se; negligent hiring, supervision, and retention because his petition failed to show any actual or threatened injury, and in each claim, Pugh had only alleged a vague harm or risk to a third-party group, such as "residents," while failing to establish any harm occurred to himself. Appellees further asserted that Pugh lacked standing to seek injunctive relief because (1) Pugh could not seek such relief on behalf of third parties and (2) the lack of a present relationship between Pugh and Appellees foreclosed the possibility that the alleged injury would recur and an injunction would redress the alleged harm. They also asserted that each cause of action, including Pugh's claims alleging false imprisonment, assault and battery, invasion of privacy, intentional infliction of emotional distress, negligence, gross negligence, negligence per se, and the DTPA violation, were barred by the applicable statutes of limitations. Appellees cited to the applicable statutes of limitations and argued that, because Pugh had alleged conduct occurring while Pugh was "in the program," he failed to bring each claim within the applicable limitations period because his participation had ended on March 29, 2020. They also argued that Pugh failed to allege facts that

demonstrated false imprisonment and failed to allege any claims against Sandoval in his individual capacity.[1]

C. *Pugh's Response*

Pugh filed a response to Appellees' motion and addressed each opposing ground presented. Pugh asserted that he was "not su[ing] under Chapter 140A," but rather was drawing from its definitions of "standards of care or public policy" to support his claims. As to his claim for intentional infliction of emotional distress, he alleged forced servitude, humiliation, and coercion, which he asserted supported the claim beyond traditional tort elements. Regarding licensing noncompliance as negligence per se, Pugh claimed that he did not seek to privately enforce Chapter 464 because Rise was never licensed, and that the absence of licensure endangered program participants and the general public, which formed the basis for his negligence per se claim. As to standing, Pugh claimed that he continued to suffer emotional distress, reputational injury, and fear for the safety of himself and his family as a result of Rise's ongoing unlicensed operations, and due to the residents who suffer from exhaustion while operating vehicles on public roads, that posed a

---

[1]Appellees also argued that some claims raised nonjusticiable issues under the ecclesiastical abstention doctrine, and that the trial court did not have jurisdiction over any claims involving internal church governance or matters "inextricably intertwined with matters of doctrine or church governance." *In re Diocese of Lubbock*, 624 S.W.3d 506, 514 (Tex. 2021). In his reply brief, Pugh responds that Appellees' "theory exceeds the doctrine's constitutional limits" because their argument "transforms religious context into civil immunity." Pugh further asserts that, [a]t minimum, ecclesiastical abstention cannot support Rule 91a dismissal because Appellees' theory depends on accepting their factual characterization rather than [Pugh's] pleaded allegations accepted as true."

While the trial court generally concluded, in its findings of fact and conclusions of law, that Pugh's "assertions with respect to coercion additionally implicate[d] religious conduct protected under the First Amendment's Religion Clauses" and Chapter 110.001 of the Civil Practice and Remedies Code, the trial court did not include a finding that the ecclesiastical abstention doctrine or the First Amendment was a basis for dismissing Pugh's claims in its final judgment or in its conclusions of law. Accordingly, and given our disposition in this appeal, we need not address whether the trial court considered this an additional or independent basis to dismiss Pugh's claims. *See* TEX. R. APP. P. 47.1. Further, we express no opinion regarding the applicability of this doctrine to Pugh's specific claims or the trial court's jurisdiction to dispose of those claims pursuant to this doctrine.

continuing threat to himself and the public. Pugh also claimed that his allegations of direct harm due to coercive labor, confinement, emotional injury, and reputational injury, supported the concrete injury required to establish standing. In response to the argument regarding limitations, he claimed to have continued his involvement in Rise as an Operations Director and later as a member of the Executive Leadership Team until June 2022. He also claimed that "Sandoval exercised final authority and directed the conduct," thereby subjecting him to individual liability.

Eight days before the hearing on the Rule 91a motion, Pugh filed his third amended petition, the live pleading. Pugh alleged the same causes of action listed in the second amended petition, except for a withdrawal of his DTPA and "Negligent Hiring/Supervision/Retention" claims. He failed to provide specific facts supporting these causes of action but did include a general factual background. In the factual background, he alleged that his wife had filed for divorce and conditioned reconciliation upon his completion of the program offered by Rise. He claimed that Appellees used this circumstance as leverage against him. Pugh alleged that he was isolated from meaningful contact with his family with only a single fifteen-minute weekly phone call, which was monitored by supervisors, and brief supervised visitation on Sundays. He claimed that the isolation caused him to develop emotional dependency upon Rise and Sandoval, which impaired his "ability to make autonomous decisions." He alleged that during this period, he was required to perform daily labor and fundraising activities under threats of discipline or expulsion and that this labor was "unpaid, coerced, and conducted under psychological and situational pressure."

Pugh also addressed his post-program employment, alleging that following his completion of the residential program, he served in a voluntary capacity at Rise. He alleged that this work was performed while his "ability to refuse or leave was undermined by" psychological dependency and conditioned obedience developed

6

during his time in the program. He stated that he was paid one hundred dollars a week to coordinate and supervise manual labor crews, schedule facility maintenance, oversee vehicle maintenance, perform custodial tasks, and perform tasks for Sandoval's personal benefit. He also contended that, though he was not physically restrained, his ability to refuse to work was undermined by the control that Rise had gained in his life, which left him without meaningful freedom of choice. Pugh claimed these factors were sufficient to establish coerced labor under Sections 98.001 and 98.002 of the Civil Practice and Remedies Code. Pugh claimed that he continued to work for Rise until he confirmed, in June 2022, Rise's failure to obtain proper licensure following an open records request with the Texas Health and Human Services Commission (HHSC). He maintained that, only then, was he able to connect his experiences with the unlawful residential treatment operation, and he alleged that this was sufficient to trigger the application of the discovery rule and avoid dismissal due to limitations.

D. *The Rule 91a Hearing*

At the hearing on Appellees' Rule 91a motion to dismiss, Pugh appeared pro se. The trial court first noted that it had not yet reviewed Pugh's third amended petition but confirmed with Pugh that he had not sought any temporary injunctive relief in his live pleading. Appellees then proceeded to present argument as to standing and limitations. Pugh objected, claiming that the purpose of the hearing was not to discuss the facts of the case. The trial court allowed Appellees' argument to proceed.

1. *Appellees' Arguments*

Appellees arguments were consistent with the points presented in their Rule 91a motion. Appellees also addressed the fact that their motion had been filed in response to Pugh's second amended petition. Appellees noted that Pugh had filed his third amended petition prior to the hearing, wherein he "dropped" the DPTA and

7

Chapter 140A claims but added a claim under Chapter 98 pertaining to human trafficking. Appellees stated that several of their arguments were equally applicable to the new claim under Chapter 98, but if needed, they could later file a new 91a motion specific to the new claim.

Appellees first addressed Pugh's standing. Appellees argued that Pugh lacked standing to bring claims on behalf of third parties; they also argued he lacked standing to bring forward any claim for injunctive relief because his undisputed statements were that he was no longer involved with Rise, without implication of any future involvement. Accordingly, Appellees argued that any injunction issued would not provide relief to Pugh. Further, counsel argued that Pugh failed to claim that he was suffering any actual or threatened injury, and that the injuries for which he sought redress were purely hypothetical.

Appellees then addressed limitations and asserted that all but one of Pugh's claims were subject to a two-year statute of limitations, with the new Chapter 98 claim subject to a five-year statute. Appellees asserted that all claims would have accrued more than five years before the date of Pugh's first filed pleading because he asserted that participation in the program had ended in March of 2020. Appellees also pointed to Pugh's failure to identify the specific dates that the injuries occurred and the necessity of identifying where each incident occurred when alleging a tort. They also challenged Pugh's attempt to rely on the discovery rule, claiming that, while the rule prohibited the application of the statute of limitations when the claims were inherently undiscoverable, all of Pugh's claims would have been known to him at the time they were alleged to have occurred. Appellees argued that Pugh's sole ground for applying the discovery rule was an attempt to create a private claim to enforce the HHSC licensing regime, which was only enforceable by the Attorney General, HHSC, or county attorneys. Appellees asserted that Pugh's claimed late discovery of a licensing error with the State did not toll the statute of limitations

8

regarding Pugh's personal injury or human trafficking claims. Appellees also argued that the discovery rule would not apply to the unlicensed-facility claim because HHSC made its licensing information publicly available, and any information that was available through public disclosure or public records was inherently discoverable.

Appellees argued that Pugh failed to bring any claims against Sandoval in an individual capacity and his pleadings stated no facts indicating that Sandoval had any direct involvement in the issues raised. Further, Pugh admitted to voluntary participation in the program and, thus, Appellees contended, that he had alleged no detention without consent or authority of law. Finally, Appellees asserted that Pugh's claim of intentional infliction of emotional distress was duplicative of his other claims and argued that such a claim, as a gap-filler, was unavailable where traditional torts cover the conduct.

### 2. *Pugh's Response*

In responding to Appellees' arguments, Pugh stated that he was "brainwashed" during his time in the program to idolize Sandoval and was required to complete personal tasks for him. He then began to describe specific instances during his time in the Rise program that caused him to want to leave, but he stated that, because the program required that a participant's time must restart if they left the program at any point, he chose not to leave. Pugh challenged Appellees' argument that he raised claims on behalf of third parties by stating that his petition sought redress for his own claims and not those of anyone else.

Addressing his participation after his time in the Rise program ended, he stated that because Sandoval saw that he possessed leadership abilities, he enticed Pugh to work as the operations director at the church. He discussed what Sandoval would have workers do who failed to show obedience. He also described instances when he and others drove while sleep deprived. Because it was a continuing issue

9

with current participants and workers, Pugh stated that he was concerned about the safety of his son and others in the community who shared the roads with those individuals.

Pugh then raised instances of alleged rape, murder, and sexual assault of others, but the trial court confirmed with Pugh that he was only bringing the suit on his own behalf. Pugh then described his own mental health issues and why it led him to remain involved with Rise. He argued that, regardless of any application of the discovery rule to the human trafficking claim, the law provided for a ten-year statute of limitations in the event of injury; he argued that because he suffered mental injury, he was within his rights to proceed on that claim.

### 3. *Appellees' Reply Argument*

Appellees responded that, at the appropriate time, they would respond to the factual allegations that Pugh raised, but his petition still failed to provide dates of the specific occurrences that would constitute unlawful or tortious conduct, and Pugh failed to state any injuries with particularity.

Before the hearing adjourned, Pugh claimed that the Appellees' motion was moot because Pugh had filed a third amended petition after the motion was filed and prior to the hearing, but Appellees had not filed an amended motion directed at the live pleading. The trial court stated that it would review the second and third amended petitions and determine which issues were different. Pugh continued to argue against the trial court making its determination based on Appellees' motion, regardless of any identical issues that existed in the two petitions; Appellees responded that Rule 91a.5 allowed for the filing of an amended motion upon a plaintiff's amended petition but did not make such action mandatory. TEX. R. CIV. P. 91a.5. Appellees claimed that their understanding of the rule was that it allowed them to proceed with the hearing because the elements that they asserted were the same with respect to identical claims, and that, if necessary, they could file

another Rule 91a motion to dismiss to address the new claim. The trial court announced that it would review Pugh's latest filing and take the matter under consideration.

E. *The Trial Court's Ruling*

The trial court granted Appellees' motion and stated the grounds upon which it did so in its final judgment. "First, and dispositively," the trial court found that each asserted cause of action was barred by the applicable statute of limitations, and Pugh failed to allege any facts requiring that they be tolled. As to the claim of trafficking or forced labor, the trial court found that Pugh was not a party authorized by the statute to bring the claim and, thus, lacked standing. The trial court found that the claims of false imprisonment, battery, invasion of privacy, and intentional infliction of emotional distress failed because they were available under a traditional tort action. As to negligence and gross negligence, the trial court found that Pugh failed to allege any actual or threatened injury, and he only alleged injury to an unspecified class of people while stating that he was only representing himself and "no other person or class of people." The trial court also found that Pugh lacked standing to bring a claim that Appellees were operating an unlicensed facility because he was not a party authorized under the statute to bring such a claim. The trial court subsequently filed its findings of fact and conclusions of law.

II. *Standard of Review*

Rule 91a of the Texas Rules of Civil Procedure provides that "a party may move to dismiss a cause of action on the grounds that it has no basis in law or fact." TEX. R. CIV. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.*

11

We review de novo whether a cause of action has any basis in law or fact. *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 628 (Tex. 2021); *In re Estate of Sheshtawy*, 478 S.W.3d 82, 86 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *see also In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding) (explaining that "whether a defendant is entitled to dismissal under the facts alleged is a legal question"); *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam) (citing *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). Under a de novo review of a Rule 91a dismissal, "the availability of a remedy under the facts alleged is a question of law and the rule's factual-plausibility standard is akin to a legal-sufficiency review." *Sanchez*, 494 S.W.3d at 724; *Aaron v. Caddo Minerals, Inc.*, No. 11-22-00020-CV, 2023 WL 5622115, at *3 (Tex. App.—Eastland Aug. 31, 2023, pet. denied) (mem. op.). We look solely to the pleading and any attachments permitted by Rule 59 of the Texas Rules of Civil Procedure to determine whether the dismissal standard is satisfied. *Sanchez*, 494 S.W.3d at 724; *Estate of Mathis*, 543 S.W.3d 927, 931 (Tex. App.—Eastland 2018, no pet.); *see* TEX. R. CIV. P. 59, 91a.6. We will affirm if the trial court's decision was proper under any applicable theory. *Hamilton v. Pechacek*, 319 S.W.3d 801, 809 (Tex. App.—Fort Worth 2010, no pet.); *Agnew v. Gonzales*, No. 11-19-00249-CV, 2021 WL 3414549, at *2 (Tex. App.—Eastland Aug. 5, 2021, no pet.) (mem. op.).

To determine whether the cause of action has a basis in law or fact, we construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleading. *Wooley*, 447 S.W.3d at 76. In doing so, we apply the fair-notice pleading standard. *Id.* A threadbare recitation of the elements of a cause of action and mere conclusory statements will not suffice. *Vasquez v. Legend Nat. Gas III, LP*, 492 S.W.3d 448, 451 (Tex. App.—San Antonio 2016, pet. denied) (citing *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex.

App.—Beaumont 2014, pet. denied)); *see also Tobias v. SLP Brownwood LLC*, No. 11-19-00247-CV, 2021 WL 2584505, at *3 (Tex. App.—Eastland June 24, 2021, no pet.) (mem. op.).

A Rule 91a motion to dismiss must identify each cause of action being challenged and must state the specific reasons why the challenged causes of action have no basis in law or fact. TEX. R. CIV. P. 91a.2. To avoid a ruling on the motion, the nonmovant has the option to nonsuit or amend the challenged causes of action at least three days before the hearing. *Id.* R. 91a.5(a). If the nonmovant does not timely nonsuit or amend, however, the trial court must rule on the motion. *Id.* R. 91a.5(c). If the nonmovant timely amends, the movant may withdraw or amend the motion before the date of the hearing. *Id.* R. 91a.5(b). A timely amendment under Rule 91a.5 restarts the time periods provided by the rule. *Id.* R. 91a.5(d).

A. *The Trial Court Looked Only to the Pleadings*

In his first issue, Pugh argues that the trial court erred by permitting and allegedly relying on factual arguments as to the merits of the case at the hearing. Pugh contends that Appellees presented "a detailed factual narrative regarding [Pugh's] conduct, participation in the ministry, and alleged injuries." He claims that this was a deviation from the pleadings-only limitation of the rule, and, thus, requires reversal.

Rule 91a limits the scope of a trial court's factual, but not legal inquiry. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 655 (Tex. 2020). The trial court may consider the substance of motions and hearings in addition to a plaintiff's pleadings in the determination of whether Rule 91a would warrant dismissal of the challenged claims. *Id.*; *see* TEX. R. CIV. P. 91a.6. Though evidence may not be considered, a trial court may consider a defendant's argument and presentation of legal theories showing that the facts, as alleged, would not entitle the plaintiff to the relief he requests. *Bethel*, 595 S.W.3d at 655–56; *see* TEX. R.

13

CIV. P. 91a.6. Accordingly, oral argument at a hearing on a Rule 91a motion, including counsel's legal contentions regarding the reasons a party is not entitled to the relief sought, is permitted. *Bethel*, 595 S.W.3d at 655–56.

### 1. *Limitations*

We first address Pugh's challenge to the trial court's consideration of Appellees' limitations arguments. When a movant raises limitations for a no-basis-in-law argument, "the factual inquiry that follows is restricted to reviewing the non-movant's pleading and any [R]ule 59 exhibits that may be attached to and incorporated therein." *Davis v. Homeowners of America Ins. Co.*, 700 S.W.3d 837, 845–46 (Tex. App.—Dallas 2023, no pet.). When a plaintiff's own pleading establishes a complete legal bar by affirmatively negating entitlement to the relief requested, an affirmative defense such as limitations may warrant dismissal. *Id.* at 844. Here, Appellees did not attempt to present extrinsic evidence at the hearing but instead solely relied upon the dates of injury that Pugh had alleged somehow abridged the statutes of limitations. Appellees argued, in both their Rule 91a motion and at the hearing, that even the dates given for facts as alleged by Pugh would be insufficient to prevent limitations from barring his claims.

### 2. *Standing*

As to standing, Appellees' argument implicated two unique challenges to the validity of Pugh's claims. First, Appellees raised the issue of constitutional standing. Constitutional standing requires a plaintiff to have suffered a particularized injury traceable to the defendant and likely to be redressed by a favorable decision. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154–55 (Tex. 2012). While a plea to the jurisdiction is generally the appropriate vehicle to bring a challenge to constitutional standing, an appellate court may review the issue of constitutional standing if it is raised in a Rule 91a motion. *See Data Foundry, Inc. v. City of Austin*,

14

620 S.W.3d 692, 696–700 (Tex. 2021); *see also Texas Medicine Resources, LLP v. Molina Healthcare of Texas, Inc.*, 659 S.W.3d 424, 440 (Tex. 2023).

Second, Appellees raised the issue of statutory standing. Texas courts have recognized the distinction between constitutional standing and statutory standing, noting that statutory standing concerns whether the legislature has expressly or impliedly granted a particular class of persons the right to sue as a matter of law. *Busbee v. Cnty. of Medina*, 681 S.W.3d 391, 395 (Tex. 2023); *Molina Healthcare*, 659 S.W.3d at 441; *Berry v. Berry*, 646 S.W.3d 516, 527 (Tex. 2022). When a plaintiff brings a claim under a statute that does not authorize that person's enforcement, the claim has no basis in law and may be subject to dismissal under Rule 91a. *See* TEX. R. CIV. P. 91a.6; *see also Molina Healthcare*, 659 S.W.3d at 440 (holding that a party loses *on the merits* when it fails to satisfy the requisites of a particular statute); *Wells v. Sumruld*, No. 11-23-00281-CV, 2025 WL 714723, at *4 (Tex. App.—Eastland Mar. 6, 2025, no pet.) (mem. op.) (holding that the trial court properly dismissed the appellant's suit where the pleaded cause of action did not create a private cause of action).

Here, Appellees asserted that Pugh lacked "standing" to bring a claim for Appellees' alleged noncompliance under Section 464.002 of the Texas Health and Safety Code because he was not a party authorized under the statute to institute enforcement. This argument raised the issue of statutory standing. *See Berry*, 646 S.W.3d at 527.

However, they also asserted that Pugh lacked standing to bring his claims of intentional infliction of emotional distress, negligence, and negligence per se because he failed to show any actual or threatened injury to himself. Such an argument raised the issue of constitutional standing rather than statutory standing. *See Heckman*, 369 S.W.3d at 154–55. At the hearing on the motion, the trial court only heard brief argument as to Pugh's failure to allege actual or threatened injury.

15

Appellees' arguments as to both forms of standing was limited to the claims raised and the facts alleged in Pugh's pleading. They presented no facts beyond Pugh's claims and allegations to support dismissal of any claims on the basis of standing.

The trial court was permitted to hear arguments as to limitations and standing, so long as such arguments were based solely on the face of the pleadings and the facts as Pugh alleged. *See Davis*, 700 S.W.3d at 846–47; *see also Jorolan v. Eads*, No. 02-23-00338-CV, 2025 WL 628340, at *3–4 (Tex. App.—Fort Worth, Feb. 26, 2025, no pet.) (mem. op.). Because Appellees' argument relied solely upon Pugh's pleadings and raised no additional evidence or factual allegations, the trial court did not err in its consideration of Appellees' arguments relating to the applicability of limitations and standing as presented in their Rule 91a motion. We overrule Pugh's first issue.

B. *The Trial Court was Permitted to Rule Upon Grounds of Standing and Statute of Limitations*

In his third issue, Pugh claims that the trial court erred in dismissing his claims against Appellees on standing and limitations when such grounds were dependent on disputed facts. He asserts that, if the grounds of standing and limitations could only be resolved by allowing Appellees' counsel to present factual assertions beyond the live petition, those grounds were not proper for dismissal under Rule 91a.

As noted above, Appellees' counsel only presented arguments based upon the factual assertions that Pugh alleged in his petition. There is no evidence in the record to suggest that Appellees presented facts beyond what was alleged in Pugh's petition. As has been established, the trial court was permitted to dismiss Pugh's claims upon the grounds of limitations and standing when such grounds were evident from Pugh's pleadings. *See Davis*, 700 S.W.3d at 846–47; *see also Jorolan*, 2025 WL 628340, at *3–4.

16

As it relates to limitations, Appellees relied on the latest possible date that Pugh alleged that the injuries giving rise to the claims he asserted could have occurred in relation to his time in the residential treatment program. In this regard, Pugh alleged in his third amended petition that his time in the Rise residential program ended on March 29, 2020. He also alleged that, after his completion of the residential treatment program, he worked for Rise as an employee until June 2022. His original petition was filed on September 11, 2025.

Each tort claim that Pugh raised is subject to a two-year statute of limitations. Civ. Prac. & Rem. § 16.003 (West 2017); *see also, e.g.*, *Schlumberger Technology Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) (noting in a case where the plaintiff alleged injury resulting from the defendant's negligence that a suit for personal injury must be brought no later than two years after the date of accrual); *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 619 (Tex. 1999) (noting that intentional infliction of emotional distress has a two-year statute of limitations); *Deaver v. Desai*, 483 S.W.3d 668, 675 (Tex. App.—Houston (14th Dist.) 2015, no pet.) (same); *Brothers v. Gilbert*, 950 S.W.2d 213, 216 (Tex. App.—Eastland 1997, pet. denied) (noting that assault claims are governed by a two-year statute of limitations); *Stevenson v. Koutzarov*, 795 S.W.2d 313, 319 (Tex. App.—Houston [1st Dist.] 1990, writ denied) ("Invasion of privacy is governed . . . by the two-year statute of limitations."), *disapproved on other grounds*, *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136 (Tex. 2019); *Martinez v. Lone Star Custard Holding, LLC*, No. 13-23-00552-CV, 2024 WL 4456293, at *2 (Tex. App.—Corpus Christi–Edinburg Oct. 10, 2024, no pet.) (mem. op.) ("Negligence, gross negligence, [and] negligence per se . . . are subject to a two-year statute of limitations period.").

Although Pugh failed to provide a concrete date of injury for each allegation, based on the face of Pugh's pleadings, his causes of action were rooted in time spent in the Rise residential program. The incidents causing the injuries he alleges would

17

have accrued no later than March 29, 2020, over five years before the date Pugh filed his original petition. However, even accepting that such injuries could have occurred during his employment with Rise, Pugh asserted that this employment relationship ended in June 2022. This would indicate that the incidents that caused the alleged injury would have occurred over three years before Pugh filed his original petition.

Pugh briefly asserted the applicability of the discovery rule in his third amended petition, stating, "Plaintiff did not learn of Defendants' unlawful, unlicensed operation until December 8, 2023." The discovery rule applies only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable. *Freeman v. Harleton Oil and Gas, Inc.*, 528 S.W.3d 708, 734 n.28 (Tex. App.—Texarkana 2017, pet. denied). "Knowledge of injury initiates the accrual of the cause of action and triggers the putative claimant's duty to exercise reasonable diligence to investigate the problem, even if the claimant does not know the specific cause of the injury or the full extent of it." *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 209 (Tex. 2011); *see In re Jorden*, 249 S.W.3d 416, 422 (Tex. 2008) (orig. proceeding) ("[A] cause of action accrues for limitations purposes when a claimant learns of an injury, even if the rest of the essential facts are unknown."); *see also Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 814 (Tex. 2021) (noting that "once the defendant's wrongful conduct causes a legal injury, the injured party's claims based on that wrongful conduct accrue—and the limitations period begins to run—even if . . . the claimant does not yet know the specific cause of the injury or the party responsible for it").

Here, Pugh had actual knowledge of the injuries that he alleged occurred which gave rise to his personal injury claims, no later than June 2022. His newly gained knowledge that Rise was allegedly operating without the proper licensing requirement on December 8, 2023, would not toll the statute of limitations for his personal injury claims. *See In re First Rsrv. Mgmt., L.P.*, 671 S.W.3d 653, 661–62

(Tex. 2023) (orig. proceeding) (holding that pleading a legal theory, without pleading the essential factual allegations supporting that legal theory, is not sufficient); *see also In re Springs Condos., L.L.C.*, No. 03-21-00493-CV, 2021 WL 5814292, at *2–3 (Tex. App.—Austin Dec. 8, 2021, orig. proceeding) (mem. op.) (holding that arguments of the discovery rule tolling a plaintiff's personal injury claims would not have been persuasive when she became aware of the incidents causing injury at an earlier date).

Thus, looking only to the facts alleged by Pugh in his petition, it is clear that Pugh's personal injury claims were barred by the applicable statute of limitations for false imprisonment, assault and battery, invasion of privacy, intentional infliction of emotional distress, and negligence. *See* CIV. PRAC. & REM. § 16.003(a); *Davis*, 700 S.W.3d at 846–47. As such, the trial court did not err in dismissing these claims based on limitations.

The trial court also found that Pugh lacked standing to bring a claim for operating an unlicensed residential treatment facility under Section 464 of the Health and Safety Code because the statute permitted only the Attorney General, a district or county attorney, or HHSC to bring such a cause of action. Section 464.017 provides that (1) HHSC may file a suit to recover civil penalties against a violator of the licensing requirement and may require that the Attorney General or appropriate district or county attorney to institute the action, or (2) the Attorney General, district attorney, or county attorney may maintain an action under the chapter on their own initiative. TEX. HEALTH & SAFETY CODE ANN. § 464.017(b), (c), (e) (West Supp. 2025).

When a party alleges a private cause of action that is derived from a statutory provision, the language of the specific provision must clearly imply that it gives rise to the private cause of action. *Molina Healthcare*, 659 S.W.3d at 431 (citing *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004)). The text of

19

Section 464.017 refers only to the three above-mentioned governmental parties as those who are authorized to bring a claim under the statute. HEALTH & SAFETY § 464.017. Pugh made no allegations in his third amended petition that he represented any party that was authorized by the statute to bring a claim for civil penalties against Appellees. Therefore, looking only to Pugh's pleading, it is apparent that he was not a party authorized to bring a claim for enforcement of the licensing requirement provided by Section 464 of the Health and Safety Code, and the trial court did not err in dismissing his claim on this ground.

Accordingly, the trial court did not err in dismissing Pugh's claims of false imprisonment, assault and battery, invasion of privacy, intentional infliction of emotional distress, negligence, gross negligence on the grounds of limitations, and operation of an unlicensed residential treatment facility upon the grounds of standing.

We overrule Pugh's third issue.

C. *The Trial Court was Permitted to Rule on the Rule 91a motion but not Pugh's Unaddressed Claim*

We next address the trial court's dismissal of Pugh's claim of human trafficking/forced labor under Section 98.002 of the Civil Practice and Remedies Code. In his second issue, Pugh asserts that the trial court erred by ruling on the Rule 91a motion that was directed at a prior pleading, which was superseded by his amended live pleading that he filed seven days before the hearing. He claims that because the trial court did not apply the motion to the operative pleading, the analysis was improper, and therefore, the resulting dismissal cannot stand.

A timely amendment to a petition does not automatically moot the pending Rule 91a motion or relieve the trial court of its obligation to rule. *See Parker v. Ohio Development LLC*, No. 04-23-00069-CV, 2024 WL 1864756, at *3 (Tex. App.—San Antonio Apr. 30, 2024, pet. denied) (mem. op.). In this circumstance, the

20

pending motion is not rendered a nullity. *Id.* For the causes of action identified in the pending motion, the movant who stands on its motion is entitled to have those claims tested against the allegations in the live pleading. *See id.* (citing *Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d at 266).

However, Rule 91a.2 mandates that a motion to dismiss "must state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both." TEX. R. CIV. P. 91a.2 . Because dismissal under Rule 91a is a harsh legal remedy, its requirements should be strictly construed. *Davis*, 700 S.W.3d at 842. Arguments made by the movant at the hearing do not substitute for compliance with the identification requirements of Rule 91a.2; the motion must identify the causes of action it addresses. *See MedFin Manager, LLC v. Stone*, 613 S.W.3d 624, 631 (Tex. App.—San Antonio 2020, no pet.) (holding that the requirement to identify each cause of action under Rule 91a.2 is strictly enforced, and the trial court erred by dismissing causes of action not identified in the written motion); *see also City of Forest Hill v. Mino*, No. 02-25-00132-CV, 2025 WL 3492583, at *7 (Tex. App.—Fort Worth Dec. 4, 2025, no pet.) (mem. op.) (noting that Rule 91a does not contemplate dismissal of an action that was not challenged by the movant).

Because Appellees were entitled to have the claims identified in their motion tested against the live pleading, the trial court properly heard and rendered a dismissal as to the claims identified in the motion, as noted above. *See Parker*, 2024 WL 1864756, at *3. However, the trial court erred in dismissing Pugh's claim of Human Trafficking/Forced Labor under Section 98.002 of the Civil Practice and Remedies Code, which was included in Pugh's third amended petition, because it

21

was not identified or addressed in Appellees' motion.[2] *City of Forest Hill*, 2025 WL 3492583, at *8–10 (holding that the trial court did not err in denying a party's Rule 91a motion as to the Section 1983 claims because those claims were not challenged, identified, or addressed in the motion).

Accordingly, we sustain Pugh's second issue in part, to the extent that the trial court dismissed Pugh's claim under Section 98.002. Even though Appellees presented argument on this claim during the hearing, over Pugh's objections, Pugh's Chapter 98.002 claim had not been identified or fairly addressed by Appellees within their Rule 91a motion.[3] *See MedFin Manager, LLC*, 613 S.W.3d at 631; *see also City of Forest Hill*, 2025 WL 3492583, at *7.

## III. *This Court's Ruling*

We affirm in part and reverse and remand in part. We reverse the trial court's judgment to the extent that it dismissed Pugh's Section 98.002 claim pursuant to Appellees' Rule 91a motion, and we remand this cause to the trial court for further proceedings on that claim. We affirm the judgment in all other respects.

W. BRUCE WILLIAMS
JUSTICE

June 18, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[2]In so holding, we make no determination as to the merits of Pugh's claim under Section 98.002. We hold only that, because Appellees' Rule 91a motion was deficient as to this claim, the trial court erred in dismissing this specific claim in its order granting Appellees' motion.

[3]While Appellees conceded that they did not address Pugh's Chapter 98.002 claim in their Rule 91a motion and stated that they could file an additional Rule 91a motion addressing it, they did not do so.